In re Richard **BARNETT**, Eddie Read, P. Scott Neville, Nathaniel Howse, Jr., and R. Eugene Pincham, Petitioners.

No. 96–2876.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 12, 1996.

Decided Sept. 4, 1996.

Judson H. Miner (submitted), Jeffrey I. Cummings, Davis, Miner, Barnhill & Galland, Chicago, IL, R. Eugene Pincham, Chicago, IL, P. Scott Neville, Jr., Nathaniel R. Howse, Howse, Howse, Neville & Gray, Chicago, IL, for Richard Barnett.

R. Eugene Pincham, Chicago, IL, P. Scott Neville, Jr., Nathaniel R. Howse, Howse, Howse, Neville & Gray, Chicago, IL, for Eddie Read.

P. Scott Neville, Chicago, IL, for P. Scott Neville.

Nathaniel Howse, Chicago, IL, for Nathaniel Howse.

R. Eugene Pincham, Chicago, IL, for R. Eugene Pincham.

Lawrence Rosenthal, Jean Dobrer, Benna R. Solomon, Andrew S. Mine, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago.

Jerold S. Solovy, Joel T. Pelz, Thomas C. Buchele, Jenner & Block, Chicago, IL, Donald Hubert, Chicago, IL, David A. Bonoma, Shefsky, Froelich & Devine, Chicago, IL, for Carole Bialczak.

Before POSNER, Chief Judge, and RIPPLE and KANNE, Circuit Judges.

POSNER, Chief Judge.

Two plaintiffs in a suit pending before Judge Duff in the Northern District of Illinois, and their lawyers, have filed a petition for mandamus asking this court to order the judge to reinstate the lawyers, whose appearances as counsel he ordered stricken on the ground that they had abandoned their clients. The suit, filed by these lawyers in 1992, challenges the procedure and results of a redistricting that year of Chicago's wards, on the ground that it improperly dilutes the voting strength of Chicago's black population. See *Barnett v. Daley*, 32 F.3d 1196 (7th Cir.1994). A similar suit (*Smith*), by plaintiffs represented by attorney Judson Miner, was filed shortly afterward and consolidated with *Barnett*. In August of 1995, Miner was designated as lead counsel for the plaintiffs in both cases. Since then (and indeed since the fall of 1994), the three petitioner lawyers have rarely appeared in the

courtroom in the consolidated suit. A bench trial, limited to liability, began at the end of February of 1996 but was interrupted because Miner was seriously injured in an accident. The district judge expressed his displeasure at the fact that none of the plaintiffs' other lawyers were prepared to pick up the reins dropped by Miner. On June 19, shortly before the trial resumed, the judge on his own initiative struck as attorneys of record in the case the lawyers—four in number, of whom the petitioner lawyers are three—who had not appeared in the courtroom for at least a year.

The petitioner lawyers asked the judge to vacate the order. They pointed out (and Miner confirmed) that if the plaintiffs prevailed in the trial on liability (which was drawing to a close—it ended on August 1, and the judge has not yet rendered his decision), and the case then entered the relief stage, the two groups of plaintiffs—one represented by Miner and his associates, the other by the petitioner lawyers—might disagree about the proper remedy.

In a hearing on July 17 to consider the motion to vacate his order, the judge elaborated upon his reasons. They had mainly to do with his belief that the petitioner lawyers had been responsible for postponing the resumption of the trial until Miner recovered from his injury.

> We had to disadvantage witnesses. We had to disadvantage all kinds of people. We had to disadvantage other cases. We had to bring cases into the hiatus that weren't scheduled for then. We had to get another judge to take a massive securities case off of our hands so that we could arrange things adequately.... I was sorely disappointed you weren't here, and I felt that you had abandoned your clients.... I decided that the only thing to do to clean up this case, so you yourselves would be protected in fact from any unhappy clients, was to take you off the case. And it was a matter of my sense of responsibility of the management of the case, of the benefit of the class, of the continuation of the case, and of the responsibility to the other plaintiffs and defendants as well.

The judge accused one of the petitioner lawyers, Eugene Pincham, of having "told the world" that Pincham had complained to the judge about holding court on Martin Luther King's birthday, which the judge described as "an unfortunate kind of criticism, especially since it wasn't true." The judge elaborated:

> Mr. Pincham told the press that he had been here that day and had told me that and that wasn't true, and everybody who was here knows that wasn't true because I asked where Mr. Pincham was and they all said he was here and left.
>
> Now, that's not really the major thing here, but it's an indication of my feeling that the case was abandoned. And then there has been some major political comments made about the case by many people over those period of months, from the perspective of your colleague [Pincham] primarily, who has great access to the press. He even put me in the category of Judge Baer on one personal column that he wrote for one newspaper, and I never responded, I never objected, I never said anything about that that was in any way punitive or angry or hostile.
>
> But I know proper behavior and I know proper representation, and I know my responsibility to the class and to the people of Chicago in this case, and I have done the right thing [in removing the lawyers] and I'm not going to change it.

When Pincham then asked, "May I be heard, if the Court please?" the judge refused. Pincham complained, "Judge you have made certain remarks about me and you're not allowing me an opportunity to respond. Now, if I can't be heard, fine." The judge replied: "Well, I couldn't be heard in the newspaper, Mr. Pincham."

 An order disqualifying counsel is not appealable as a collateral order or otherwise, but it may be challenged by the filing of a petition for mandamus if the petition demonstrates both irreparable harm and (what would not be required were such an order merely being challenged on appeal from the final decision in the case, as in *Philips Medical Systems Int'l, B.V. v. Bruetman*, 8 F.3d

600, 605–06 (7th Cir.1993)) a *clear* right to relief. *In re Sandahl,* 980 F.2d 1118, 1119–21 (7th Cir.1992); *United States v. Vlahos,* 33 F.3d 758, 761–62 (7th Cir.1994). The first condition is satisfied, since this complex case (the trial on liability consumed 48 days) may soon enter the relief stage, at which the plaintiffs may be at a decisive disadvantage if they must go out and hire new counsel at so late a date in the proceedings. Should a remedial decree go into effect, it is unrealistic to suppose that it would be vacated by this court on appeal on the ground that some of the plaintiffs had been improperly denied counsel; and if it were vacated on that ground, while the plaintiffs would be protected the larger public interest at stake in this lawsuit would be disserved by the consequent delay in the proceeding.

█ We turn to the second condition for mandamus, that the petition demonstrate a clear right to the relief sought. There are three themes in the judge's remarks explaining the basis for his order refusing to allow these lawyers to appear. The first is that the lawyers had harmed the case and the judge by not taking up the slack caused by Miner's temporary absence from the case. The second is that they had harmed their clients by abandoning them. The third is that one of the lawyers, Pincham, had made unfair public criticisms of the judge. Clearly, none of these is a proper ground for the expulsion of these lawyers from the courtroom and the case.

1. Even if the lawyers could have handled the trial in Miner's unexpected absence—of which there is no indication—they did not disobey any order of the judge in not doing so, for no such order was ever entered. No one, so far as appears, ever expected these lawyers to be Miner's understudies, ready to try the case were he unable to do so. No arrangements were made for the contingency, which was not anticipated by anyone, of a disabling illness or accident to the lead counsel.

Even if the lawyers fell down on the job, by the time the judge got around to expelling them the trial was almost over. It is impossible to see what was gained by expelling them at a time when their services were no

longer required to keep the case moving along. If, as appears, their clients' particular need for them will not arise until the remedy stage, their absence from the trial during the time that Miner, fortunately recovered, was handling it caused no one any harm.

2. If the lawyers culpably abandoned their clients, of which again there is no indication, expelling them from the case without making arrangements for new counsel for the clients would obviously harm rather than help the clients. None of the clients complained about their lawyers' absence from the courtroom, and the judge did not attempt to ascertain from the clients whether they were dissatisfied with their representation.

█ 3. It goes without saying that public criticism of a judge is not a proper ground for the imposition of sanctions on the critic, e.g., *Craig v. Harney,* 331 U.S. 367, 374–76, 67 S.Ct. 1249, 1254–55, 91 L.Ed. 1546 (1947); *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 257 (7th Cir.1975), which in this case took the form of expelling a lawyer who criticized the judge. Unfounded inflammatory remarks can violate professional ethics, e.g., *In re Palmisano,* 70 F.3d 483, 487 (7th Cir.1995); *Standing Committee on Discipline v. Yagman,* 55 F.3d 1430, 1438 (9th Cir.1995); cf. *United States v. Cutler,* 58 F.3d 825 (2d Cir.1995), but the judge made no findings that would justify such a determination here. The newspaper clippings that have been filed with us do not indicate a level of vituperation that could be thought to endanger the administration of justice.

The judge's recorded remarks, while extensive, disclose no basis in law for the action he took, and we cannot think of any. We direct the judge to vacate his order striking the appearances of the petitioner lawyers as attorneys of record in this case.

So Ordered.