Richard BARNETT, et al., Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants,

and

Carole Bialczak, et al., Defendant–Intervenors.

Mary BONILLA, et al., Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants,

and

Carole Bialczak, et al., Defendant–Intervenors.

Nos. 92 C 1683, 92 C 2104 and 92 C 2666.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 4, 1997.

Nathaniel R. Howse, Jr. Howse, Howse, Nevelle & Gray, Chicago, IL, R. Eugene Pincham, Chicago, IL, Philander Scott Neville, Jr., Chicago, IL for Richard Barnett.

**1268**

## *MEMORANDUM OPINION*

BRIAN BARNETT DUFF, District Judge.

In order for a court "to perform its high function in the best way, justice must satisfy the appearance of justice." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This general principle is embodied by the "catch-all" federal recusal statute, 28 U.S.C. § 455(a), which provides that:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

After careful reflection, I am convinced that in order to do justice, and to preserve the appearance of justice, I must deny the motion to recuse myself brought by the Barnett class counsel, Messrs. Pincham, Neville and Howse ("movants").[1]

■ In *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Supreme Court made it clear that, except in the most extreme of circumstances demonstrating favoritism, disqualification for partiality is subject to the "extrajudicial source" limitation. *Id.*, at 554–56, 114 S.Ct. at 1157. This means that determinations of bias or partiality cannot be based on opinions, rulings, or incidents arising from the course of the judicial proceedings at issue. *Id.* Put simply, the "extrajudicial source" doctrine provides that "the alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

■ The "extrajudicial source" doctrine, however, does not require that every scrap of knowledge acquired outside of judicial proceedings will necessarily result in recusal.

While the mere presence of an extrajudicial source does not automatically establish bias, neither does the absence of an extrajudicial source necessarily preclude bias (although absent some extrajudicial bias it is exceedingly difficult to establish bias justifying recusal) *Liteky*, 510 U.S. at 554–56, 114 S.Ct. at 1157. Judges are not selected because they are naive waifs who have no life-experiences. They bring to the bench whatever experiences, interests, moral sentiments, and enthusiasms which they may have acquired in their lives. In fact, judges are selected, in large part, on the basis of the character and experience they bring to the bench. As intelligent individuals, they also bring to the bench whatever interpretive tendencies they might have had before becoming federal judges. Judges, however, no matter what their backgrounds or temperaments, must always strive to put aside their out of court experiences or perspectives in order to apply the law to the particular facts presented in the courtroom. For some, this is sometimes a difficult mental exercise, but it is one of the hallmarks of being a responsible jurist.

Movants argue that I should recuse myself because I have made several rulings adverse to the *Barnett* class or its attorneys. The Supreme Court has spoken with perfect clarity holding that adverse rulings almost never constitute an adequate basis for recusal: "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157. The Supreme Court elaborated the extent to which observations and rulings arising from the course of trial are almost never an adequate basis for recusal:

> ... opinions formed by the judge on basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment im-

**1.** This opinion presumes a passing familiarity with the facts of this complex case which alleges that the current ward map for the City of Chicago violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and the 14th and 15th Amendments of the United States Constitution. This consolidated case was originally brought by three separate classes of plaintiffs: the *Barnett* class consisting of several African–American voters in the City of Chicago, the *Smith* class consisting of 16 African–American aldermen for the City of Chicago, and the *Bonilla* class consisting of several Latin–American voters in the City of Chicago.

possible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Id.*, at 555, 114 S.Ct. at 1157. The recusal statute "was never intended to enable a discontented litigant to out a judge because of adverse rulings made, . . . but to prevent his future action in the pending cause." *Id.*, at 549, 114 S.Ct. at 1154 (quoting *Ex parte American Steel Barrel Co.*, 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913)).

Judicial rulings alone almost never constitute a basis for disqualifying a judge because rulings "are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157. In fact, movants' complaints with my ruling removing them as counsel of record have already been addressed by the Seventh Circuit and movants have been reinstated as counsel of record for the *Barnett* class. *See In re Barnett*, 97 F.3d 181 (7th Cir.1996). In *Liteky*, however, the Supreme Court left open the possibility that a judicial ruling might be a basis for disqualification in "the rarest of circumstances" when a ruling exhibits a deep-seated favoritism or antagonism making fair judgment impossible or when a ruling is derived from an extra-judicial source. *Liteky*, 510 U.S. at 554–56, 114 S.Ct. at 1157. The relevant inquiry, thus, is not whether a particular ruling was correct but whether a ruling is one of those exceedingly rare rulings exhibiting such pervasive animosity to the parties that fair judgment is impossible. Should disqualification result merely as a result of counsel's disagreement with judicial conclusions reached in the course of litigation, the judicial system would grind to a halt.

Judicial expressions of impatience or annoyance with the conduct of attorneys are an adequate basis for establishing bias or partiality in only the rarest of circumstances. 28 U.S.C. § 455(a) requires an appearance of partiality in a case, not merely an expression of dislike for the attorneys representing a party. *See eg., In re Forty–Eight Insulations, Inc.*, 84 B.R. 129, 132 (Bankr.N.D.Ill. 1988). An appearance of partiality cannot necessarily be presumed to follow from a stormy relationship with the attorneys for a party. *In re National Union Fire Insurance Co. of Pittsburgh*, 839 F.2d 1226, 1232 (7th Cir.1988). After all, even a federal judge may be prone to "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Liteky*, 510 U.S. at 555–56, 114 S.Ct. at 1157. Rather than demonstrate bias, a court's impatience or frustration with counsel is often the result of the recognition that an attorney has not diligently represented a client's interests or is not responsibly prosecuting a case. In my opinion, it is this Court's responsibility to express its displeasure when it observes that an attorney is failing to live up to his or her responsibilities to a client, particularly when a case, such as this one, touches upon a right so fundamental as the right to participate in the political process.

In a related vein, a judge must, of course, administer his or her courtroom and docket, and such administration, no matter how stern, should not be confused with animus or partiality:

> A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration remain immune.

*Liteky*, 510 U.S. at 556, 114 S.Ct. at 1157.

It would presuppose an unrealistic "child-like innocence" to insist that a judge could not reach opinions or conclusions based upon his or her observations of proceedings in the courtroom. A judge is not recusable for bias or prejudice if he or she reaches an opinion based upon his or her courtroom observations "since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task." *Liteky*, 510 U.S. at 551, 114 S.Ct. at 1155. It goes without saying that if a judge did not form judgments concerning his or her observations of the actors at trial he or she could never reach a decision.

In light of these considerations, the inquiry into whether a judge's impartiality

might reasonably be questioned to an extent sufficient to justify recusal pursuant to 28 U.S.C. § 455(a) is not made from the perspective of a hyper-sensitive participant; instead 28 U.S.C. § 455(a) "asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *In re Bradford Mason*, 916 F.2d 384, 386 (7th Cir.1990). 28 U.S.C. § 455(a), therefore, requires an objective inquiry. As the Seventh Circuit has stated:

> Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988); *New York City Housing Develop. Corp. v. Hart*, 796 F.2d 976 (7th Cir.1986); *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir.1985). An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person ... Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will apply rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

*In re Mason*, 916 F.2d at 385–86. Thus, in reviewing the motion to recuse myself, I must make every effort to review the record from the perspective of an objective, thoughtful observer.

■■■■ 28 U.S.C. § 455(a) is not intended "to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process." *United States v. Balistrieri*, 779 F.2d 1191, 1204 (7th Cir.1985), *cert. denied*, *DiSalvo v. United States*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). 28 U.S.C.

§ 455(a) is directed against the appearance of partiality, whether or not the judge is actually biased. *Id.* Concomitantly, "judges have an obligation to litigants and their colleagues not to remove themselves needlessly (citation omitted), because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping." *In re National Union Fire Ins. Co. of Pittsburgh*, 839 F.2d at 1229. As the following discussion will bear out, in the present case the only injury to the judicial system as a whole, or to the parties themselves, would be caused by granting the recusal motion.

This Court has already heard a lengthy bench-trial which took place over the course of five months and consumed nearly 9,000 pages of transcript. There have been more than four years of discovery and pre-trial motions. This Court presently has before it the parties' proposed findings of fact and conclusions of law which collectively form a mound of documents nearly a foot high. Any delay due to my medical recuperation would pale besides the delay which would be caused by transferring this case to a colleague who has had no previous involvement or familiarity with this complex case. This case is presently receiving, and I can assure all the interest parties that it will continue to receive, my careful attention.

■■■■ In determining whether a reasonable, objective observer would conclude that a judge's impartiality might reasonably be questioned so as to require recusal pursuant to 28 U.S.C. § 455(a), "it is critically important ... to identify the facts that might reasonably cause an objective observer to question [the judge's] impartiality." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988). Movants argue that the following "facts" require my disqualification: 1) my order dismissing the *Barnett* action pursuant to Fed.R.Civ.P. 12(b)(6) which was subsequently reversed by the Seventh Circuit (*See Barnett v. Daley*, 835 F.Supp. 1063 (N.D.Ill.1993), *rev'd by*, 32 F.3d 1196 (7th Cir.1994)); 2) my minute order of June 19, 1996 memorializing my oral bench ruling of May 17, 1996 removing *Barnett* class counsel,

Messrs. Pincham, Neville, and Howse, as attorneys of record from this case and my subsequent denial on July 17, 1996 of a motion to vacate that previous order; 3) my comments from the bench of May 17, 1996 and July 17, 1996 which allegedly establish that I possess an "expressed and demonstrated animus" against the movants because of my "resentment" concerning certain statements to the news media attributed to Eugene Pincham, *Barnett* class-counsel; and 4) the circumstances of my retirement from regular active service which somehow allegedly establish that I am "physically and mentally incompetent and incapable" to decide the cases remaining before me.[2]

 Movants seek my disqualification based, in part, upon their disagreement with this Court's previous rulings. Movants' reference to this Court's order dismissing the complaints is particularly puzzling insofar as no rational observer could conclude that the order evidenced any basis for questioning this Court's impartiality towards the parties. This Court entered its ruling in *Barnett v. Daley*, 835 F.Supp. 1063, after careful consideration. As the Seventh Circuit noted in its interesting and provocative opinion, this case tests "the outer limits of minority rights in redistricting situations" raising novel questions with respect to proportional representation and the appropriate demographic measures by which to measure the adequacy of representation. *Barnett v. Daley*, 32 F.3d at

1203. It is well-established that absent evidence of some deep-seated antagonism making fair judgment impossible, a judicial ruling is not an adequate basis for a recusal motion. After careful review, I can find no basis for concluding that a reasonable, neutral observer would question this Court's impartiality on the basis of this Court's ruling on the motion to dismiss.

 Similarly, movants' argument that this Court's ruling of May 17, 1996 removing them as counsel of record, and the denial on July 17, 1996 of a motion to vacate that ruling create an appearance of partiality is also misplaced.[3] This Court's rulings do not display a deep-seated favoritism, nor do this Court's comments to counsel exhibit a deep-seated hostility to the *Barnett* class plaintiffs. This Court's order removing the *Barnett* class counsel was not motivated by a sense of partiality or bias against counsel or the *Barnett* class. There is no basis upon which a reasonable observer could conclude that this Court's actions were undertaken for any reason other than the concern that members of the *Barnett* class were not being adequately represented by their attorneys for the best part of two years and during the trial of this case. This Court's comments are perfectly unambiguous in expressing the bases for its rulings: *Barnett* class counsel had not appeared before this Court for more than a year[4] (5/17/96 Tr. at 19); the trial had been

---

2. The motion also contains lengthy discussions of the defendant-intervenors' retention of private counsel, the legal fees which have been expended in connection with this case, the media interest which this case has received, and the media attention garnered by my physical illness and disability retirement from regular active service. While all of this makes for an interesting narrative, it is entirely irrelevant to this motion made pursuant to 28 U.S.C. § 455(a). It is, however, interesting to note that several of the newspaper items attached to this motion were written by one of the movants, Mr. Pincham, during a period of time that he was not participating in the trial taking place before this Court. While it was not dispositive to my ruling to remove Mr. Pincham, this Court is nonetheless struck by the irony that Mr. Pincham was writing newspaper editorials, commenting about this case in public and arguing that this case is proof of the racism of the local Democratic party, instead of appearing before this Court in order to represent the interests of his clients. The newspaper editorials

penned by Mr. Pincham, and attached as exhibits to the recusal motion, were apparently written while Mr. Pincham was not participating in the trial before this Court but was an active candidate for political office thereby raising the unseemly appearance that Mr. Pincham had conflated the interests of his clients with his own political ambitions.

3. This Court did not enter a minute-order striking counsel until June 19, 1996. At no time during the month-long lapse between this Court's oral order and the entrance of the minute order, did any of the movants, who state that they were kept apprised of the progress of trial and were receiving and reviewing copies of this Court's notices and rulings, make any effort to express their desire to remain as class counsel of record in this case.

4. For a year, this Court inquired at repeated status hearings as to the whereabouts of Messrs. Pincham and Neville. *See e.g.*, 1/19/95 Tr. at 2–

continued due to the very serious injury of lead-counsel for the African–American plaintiffs and at no time did movants appear before this Court in order to assume their responsibilities and their share of work either before or during his absence (5/17/96 Tr. at 20); by their continued failure to appear in court, movants had effectively abandoned the representation of their clients (5/17/96 Tr. at 20, 41). It was within the context of movants, continued failure to represent their clients or to assist in the advancement of trial, that this Court made its ruling and its comments.[5]

Any comments made by this Court on May 17, 1996 concerning counsels' statements to the press were made in the context of this Court's concern for the representation being given to members of the *Barnett* class. The comments of this Court do not evidence any animosity towards the *Barnett* plaintiffs, nor do they evidence any bias or animosity which might limit my ability to decide this important case on the merits in a fair and impartial manner. The comments reflect frustration with the conduct of counsel and not a predisposition to rule on this case based upon extrajudicial concerns. The comments concerning statements made by counsel to the press were an expression of concern that certain counsel could be attempting to make this highly sensitive case an issue in a political campaign.[6] 5/17/96 Tr. at 42. That this

Court's ruling of May 17, 1996 does not evidence an undue bias against the plaintiffs is borne out by the totality of the circumstances in this case—on the same day on which this Court initially ordered *Barnett* class counsel stricken as attorneys of record, this Court granted a six week continuance of the trial in order to permit African–American plaintiffs' lead trial counsel to recover from a serious accident. 5/17/96 Tr. at 29.

Nor does the transcript of the July 17, 1996 motion to vacate this Court's order of June 19, 1996, reveal any basis upon which an observer could conclude that this Court's impartiality might be questioned. While this Court's comments were indeed critical of counsel,[7] those comments were made not because of any bias against plaintiffs or their counsel but because of this Court's very real concern for the adequacy of the representation being given to the *Barnett* class. The bases for declining to vacate this Court's previous order striking movants as counsel of record were as follows: 1) the failure by counsel to participate in their case in chief; 2) the abdication by counsel of their role as counsel for the *Barnett* class to counsel for the *Smith* class; 3) the absence, in my estimation, of any real or apparent conflict between the interests of the *Barnett* and *Smith* classes. 7/17/96 Tr. at 9. This Court also expressed its continued dismay at the extent

3; 1/26/95 Tr. at 3; 3/17/95 Tr. at 2–3; 5/5/95 Tr. at 2; 6/14/95 Tr. at 3; 12/12/95 Tr. at 16.

5. It is axiomatic that a district court is responsible for ensuring the adequate representation of a class by counsel. *See e.g., In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1124 (7th Cir.1979). Although this Court's action of striking class-counsel was unusual, this Court has never in its years on the bench experienced a situation such as the conduct of counsel that it found in this case. This Court took the action of striking class-counsel because of the unprecedented situation presented by this case and because decertification of the *Barnett* class was not a viable alternative given the posture of the trial. Movants had abdicated their representation of the *Barnett* class in the course of an extremely complicated and lengthy trial, failing to make an appearance for even a single day of trial. In fact, on August 21, 1995, this Court granted the motion of the *Barnett* class plaintiffs appointing counsel for the original *Smith* class as lead counsel for the *Barnett* class. For all intents

and purposes, the *Barnett* class counsel had surrendered their duties to counsel for the *Smith* class, and this Court simply recognized that fact. The Court of Appeals for the Seventh Circuit, however, subsequently ruled that this Court lacked a proper ground for expelling counsel. *In re Barnett,* 97 F.3d 181 (7th Cir.1996). Thus, counsel have had the appropriate opportunity to seek appellate review of this Court's ruling and have received the remedy they sought. This Court's previous ruling, therefore, does not constitute a basis for recusal.

6. This Court had repeatedly directed counsel for all the parties to avoid public comments which could drag this case into the political thicket. *See e.g.,* 4/3/96 Trial Tr. at 3978; 4/4/96 Trial Tr. at 4312–13.

7. While this Court was critical of movants, the transcript of July 17, 1996 is also replete with instances in which this Court comments upon its long familiarity and respect for movants. *See e.g.,* 7/17/96 Tr. at 6.

to which *Barnett* class counsels' abdication of any active role at trial had wreaked havoc on the administration of the trial. 7/17/96 Tr. at 10–12. None of these reasons evidence any partiality or bias against the *Barnett* class.

■ Nor, despite movants' unsupported claims to the contrary, do my comments concerning Mr. Pincham's statements in the media evidence any bias against plaintiffs. Nor, for that matter, do my comments reflect that there is any possibility that I will make a decision on the merits on some basis other than what I learned from my participation in this case. I did not rely upon Mr. Pincham's comments to the media in my decision to disqualify him from the case: "Now, that's [Mr. Pincham's public comments] not really the major thing here, but it's an indication of my feeling that the case was abandoned." 7/17/96 Tr. at 13. I was stern with Mr. Pincham,[8] but my rulings and my related comments were made based solely upon my observations in the courtroom due to my concern for both the well-being of the *Barnett* class and the administration of this extraordinarily complicated trial.

The comments upon which movants rely in their effort to establish my purported bias were not derived from an extrajudicial source of bias or prejudice but were firmly rooted in what I had observed and learned from the bench. The statements merely reiterated this Court's concerns that: 1) the progress of the trial had been hindered; 2) the interests of the *Barnett*-class plaintiffs had not been adequately represented by movants; and 3) counsel who had not actively participated in the progress of trial were nonetheless attempting to use their involvement in this case as a political campaign soapbox outside of the courtroom to the possible detriment of the interests of their clients. While I did express my annoyance at Mr. Pincham's com-

ments in the media and his use of this case as a forum for making inappropriate comments, I note nonetheless that, literally in the same breath, I stated that my pique was minimal and that my chief concern was with the abandonment of their clients by the counsel for the *Barnett* class. 7/17/96 Tr. at 8.

■ Additionally, if accepted, movants' arguments concerning my comments would turn the law of recusal on its head. It is one thing to find a basis for recusal when a judge publicly comments on a pending case to the press, *See United States v. Cooley*, 1 F.3d 985, 995 (10th Cir.1993), but it would be something entirely different to find recusal necessary every time a judge chides an attorney for making intemperate comments to the media concerning a case.[9] If every negative comment required recusal, that would be equivalent to providing litigants with a peremptory challenge to a judge. *In re National Union Fire Insurance Co. of Pittsburgh*, 839 F.2d at 1231.

In defense of their failure to participate in the prosecution of the *Barnett* class's case at trial, movants apparently contend, in part, that their participation was not necessary since they had undertaken the representation of the class on a *pro bono* basis. This Court knows of no basis, nor can it imagine one, supporting the notion that *pro bono* clients are entitled to less than active representation. Fortunately for the sake of the *Barnett* class plaintiffs, and movants' own professional reputation, the counsel representing the other plaintiffs have stepped into the breach and performed more than adequately at trial.

■ Nor do the circumstances of my retirement from regular active service provide a basis for my recusal pursuant to 28 U.S.C.

---

**8.** Having already reviewed and considered the motion to reconsider my previous order and having heard the argument of Mr. Neville in connection with that motion, this Court saw no utility in hearing additional oral argument. 7/17/96 Tr. at 17. Even a stern judge's ordinary efforts at courtroom administration remain immune for purposes of recusal. *Liteky*, 510 U.S. at 554–56, 114 S.Ct. at 1157.

**9.** While some of my colleagues have on occasion felt that it was necessary to recuse themselves in the face of media criticism. *See e.g., Haas v. Pittsburgh National Bank*, 627 F.2d 677, 680 (3rd Cir.1980), there is no authority requiring recusal in response to media criticism. Adopting such a rule would give a frustrated party or attorney in a noteworthy case a trump card in obtaining a new judge simply by venting his or her frustrations to the press.

§ 455(a).[10] I stepped down from regular active service because of a physical condition affecting my heart, not my intellect or judgment. My ill health has not compromised my ability to decide cases neutrally and impartially nor has it compromised my fidelity to my oath to perform my duties to the best of my ability and to uphold the Constitution and the laws of these United States. I have spent my life serving the public and I hope that this case, addressing profound issues of public concern, might be a fitting chapter in that career. As a long-time public servant in the military, the legislature and both the state and federal judiciaries, I can imagine no greater honor and responsibility than to decide a case of this magnitude impartially and fairly and in a manner doing justice for all the people of this City in accordance with the law.

If upon sober reflection I had concluded that a reasonable observer would find a basis for doubting my impartiality, I would recuse myself. I can, however, discern no reason why my physical ailments might lead to the conclusion that I am unable to resolve this case impartially. That I am not presently up to the physical rigors of actively handling a full calendar does not ineluctably lead a rational observer to conclude that my impartiality might be questioned. I look forward to my continued deliberation over the profound issues in this important and interesting case. If any party should conclude that the outcome or reasoning of my eventual ruling in the liability phase of this case is flawed, they will, of course, have the opportunity to take an appeal. Movants, however, have failed to present any basis for my recusal pursuant to 28 U.S.C. § 455(a).

To paraphrase a great wag—as has hopefully been borne out by this memorandum opinion—the reports of my inability to perform my judicial duties and to adjudicate matters before me have been greatly exaggerated.

---

**10.** The statute governing my retirement from regular active service, 28 U.S.C. §§ 371, 372, explicitly provides for my continued service to the Court in whatever capacity the Chief Judge of this Circuit determines is appropriate.