Timothy PIGFORD, et al., Plaintiffs,

v.

Dan GLICKMAN, Secretary, United States Department of Agriculture, Defendant.

Cecil Brewington, et al., Plaintiffs,

v.

Dan Glickman, Secretary, United States Department of Agriculture, Defendant.

Nos. CIV. A. 97–1978 PLF, CIV. A. 98–1693 PLF.

United States District Court, District of Columbia.

Jan. 4, 2001.

---

Alexander J. Pires, Jr., Conlon Frantz Phelan & Pires, Washington, DC, for Plaintiffs.

Michael Sitcov, U.S. Dept. of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

FRIEDMAN, District Judge.

The Court has before it the motion of certain individual plaintiffs to reconsider the fairness of the Consent Decree approved by this Court on April 14, 1999, defendant's opposition, Class Counsel's response, and movants' reply to defendant's and Class Counsel's arguments. The Court heard oral argument on the motion and permitted movants and the defendant to file supplemental memoranda. Upon consideration of the pre-and post-hearing memoranda and the arguments of counsel, the Court will deny the motion.

## I. BACKGROUND

On January 5, 1999, the parties filed a proposed Consent Decree which, if approved by the Court, would settle this case and establish a process for adjudicating claims by individual African American farmers who claimed that the United Stated Department of Agriculture had discriminated against them on the basis of their race when, among other things, it denied their applications for credit and/or benefit programs. After granting preliminary approval of the settlement, the Court conducted an extensive fairness hearing on March 2, 1999. On April 14, 1999, the Court gave final approval to the Consent Decree, finding that it represented a fair, reasonable and adequate resolution of the class members' claims under Rule 23(e) of the Federal Rules of Civil Procedure. *See Pigford v. Glickman,* 185 F.R.D. 82 (D.D.C.1999)

Shortly after the Court approved the Decree, seven individual putative class members appealed the Court's order approving the Consent Decree to the court of appeals, arguing that the Decree was unfair in certain respects and should be set aside. Appellants' arguments were considered and summarily rejected by the court of appeals. *See Pigford v. Glickman,* 206 F.3d 1212 (D.C.Cir.2000), *aff'g Pigford v. Glickman,* 185 F.R.D. 82 (D.D.C.1999). While the appeal was pending, the same seven appellants/movants filed the instant motion asking this Court to reconsider the fairness of the Consent Decree in light of "changed circumstances" which, they argue, justify vacating the Decree and scheduling this case for trial.

1. Movants also seek relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure. Rule 60(b)(6) permits a court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Rule 60(b)(6), Fed.R.Civ.P. The phrase "other reason," however, consistently has been interpreted by the courts to mean reasons *other than* those specified in subsections (1) through (5) of Rule 60(b). *See Baltia Air Lines, Inc. v. Transaction Management,*

## II. DISCUSSION

Movants have asked the Court to reconsider the fairness of the Consent Decree under Rule 60(b)(5) of the Federal Rules of Civil Procedure.[1] Rule 60(b)(5) permits a court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding ... [if] it is no longer equitable that the judgment should have prospective application." Rule 60(b)(5), Fed. R. Civ. P; *see Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378–83, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (applying Rule 60(b) to request for modification of consent decree); *United States v. Western Elec. Co.,* 46 F.3d 1198, 1203 (D.C.Cir.1995) (applying *Rufo* analysis to request under Rule 60(b)(5) to modify consent decree).

A party seeking modification of a consent decree under Rule 60(b)(5) "must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstances." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. at 377, 112 S.Ct. 748; *see NLRB v. Harris Teeter Supermarkets,* 215 F.3d 32, 35 (D.C.Cir.2000). To succeed on their motion in this case, movants must demonstrate that events or changed facts (1) "make compliance with the decree substantially more onerous"; (2) make the decree "unworkable because of unforeseen obstacles"; or (3) make "enforcement [of the decree] detrimental to the public interest." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. at 384, 112 S.Ct. 748; *NLRB v. Harris Teeter Supermarkets,* 215 F.3d

Inc., 98 F.3d 640, 642 (D.C.Cir.1996) (citing *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243 (D.C.Cir.1987)). By its plain terms, therefore, Rule 60(b)(6) does not apply in this case because movants have sought relief under one of the other provision of Rule 60(b). The Court therefore will focus only on whether it should reconsider its ruling under Rule 60(b)(5) of the Federal Rules.

at 35. Movants meet none of these three tests.

In their original motion for reconsideration, movants cited several examples of "changed circumstances" regarding the Track A claims process that allegedly constituted sufficient justifications for either setting aside the Consent Decree in its entirety or modifying it in unspecified ways. Many of the issues raised in the motion, however, were resolved or had become moot by the time the Court heard oral argument on the motion.[2] Accordingly, movants' supplemental hearing memorandum narrowed the alleged changed circumstances to only those still outstanding at the time of oral argument, and the Court therefore focuses only on those issues.

■ The majority of the issues raised by movants are essentially complaints regarding the manner in which adjudicators have been deciding Track A claims. Movants believe that an unacceptably high rate of Track A claims are being denied; that too few farmers are receiving debt relief; that adjudicators are deciding claims in an arbitrary and capricious manner; that adjudicators have a tendency to resolve factual disputes against class members; and that adjudicators have in certain cases accepted false and possibly perjurious information submitted by the government.

These arguments are not properly before the Court. Even if the Court were presented with evidence sufficient to support movants' claims—and it has not been—it would still decline to act on those claims at this time. As the Consent Decree and the Order of Reference make very clear, disputes regarding decisions by arbitrators should be brought to the attention of the Monitor through a Petition for Monitor Review. *See* Consent Decree ¶¶ 9(b)(v), 12(b)(iii); Order of Reference ¶ 8. Such complaints regarding the outcome of individual Track A adjudications do not constitute changed circumstances within the meaning of Rule 60(b)(5). The parties settled this case on the premise that such complaints, at least as an initial matter, would be referred to the Monitor, not the Court.

■ Movants also suggest that Class Counsel's use of non-lawyers to assist class members fill out their claims packages and Class Counsel's alleged inability to provide comprehensive information regarding similarly-situated white farmers to Track A claimants constitute changed circumstances justifying substantial modification or vacation of the Consent Decree. Movants' arguments ignore the reality of this case and are without merit.

The size of the class, which the parties originally estimated would reach 2,000 farmers, quickly ballooned to more than 21,000 farmers. In light of this enormous and unforeseen expansion of the class, and considering the relative unwillingness of lawyers other than Class Counsel and Of Counsel to assist class members, it is difficult to fathom how movants can argue that Class Counsel's decision to use non-lawyer assistants constitutes changed circumstances and somehow harms the class. Faced with the need to assist a class more than 10 times larger than expected, Class Counsel made a wise decision: rather than tell potential class members that they

---

2. For example, questions regarding the standard the Monitor should use to evaluate Petitions for Monitor Review and whether claimants are able to supplement the record when filing their Petitions were resolved by the Order of Reference, which appointed Randi Roth as the Monitor and clarified her duties and powers. *See* Order of Reference, Apr. 4, 2000, at ¶ 8(e). In addition, uncertainty regarding the rules that apply to late-filed claims has been resolved by Court order, *see*

Stipulation and Order, July 14, 2000, as has the issue of attorneys' fees for counsel other than Class Counsel and Of Counsel. *See* Memorandum Opinion and Order, Aug. 28, 2000. Certain other arguments made by these same movants throughout this litigation were considered and rejected by the D.C. Circuit in *Pigford v. Glickman*, 206 F.3d 1212 (D.C.Cir.2000), *aff'g Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C.1999).

could not participate in this case because there were not enough lawyers to assist each and every one of them with every aspect of the filing of their claims, Class Counsel chose to allow non-lawyers to assist some class members to assemble their claim packages, so long as an attorney ultimately reviewed and signed each claim before it was filed (as required by the Consent Decree). *See* Consent Decree ¶ 5(e).

With respect to movants' argument that the Consent Decree should be vacated because Class Counsel has been unable to assist a sufficient number of claimants to identify a similarly-situated white farmer (which is critical to success in a Track A claim), the Court again finds that movants' assertion, even if true, does not make the Consent Decree unfair. At the hearing on this motion, Class Counsel admitted that it has failed to identify as many similarly situated white farmers as it had anticipated (largely due to the increased class size), but noted that it expects to identify many more before filing Petitions for Monitor Review with respect to those Track A claims that were denied due to Class Counsel's admitted failures. Movants' suggestion that Class Counsel's shortcomings have so injured the chances of class members to ultimately prevail on their claims that the Consent Decree has become inherently unfair is without merit. In light of the fact that many Track A claims have not yet been decided and that the Monitor has yet to determine whether any of these allegedly injured claimants will get a "second chance" on reconsideration, this argument is premature.

■ The remainder of movants' arguments revolve around their apparent misunderstanding regarding the manner in which the Consent Decree has been implemented by Class Counsel and government counsel. Movants suggest that the two have colluded on several occasions to make decisions that adversely affect the class without first giving notice to and receiving the consent of the class. Movants cite two specific examples of such alleged "material modifications" that have been made to the Consent Decree without consent from the class: the alteration of the government's deadline for responding to Track A claims; and modification to the definition of "class member" that allegedly reduces the number of farmers who might obtain relief under the Consent Decree.

Movants first suggest that the parties' decision to enlarge the time within which the government has to respond to Track A claims violated class members' rights to due process under the Fifth Amendment and warrants setting aside the Consent Decree. In reality, however, the parties and the Court simply came to an agreement that a temporary extension of time for the government to respond in a relatively small number of cases was appropriate and necessary, particularly in light of the exponentially increased class size. The extension was not a material modification of the Consent Decree and has had only the most minor impact on claimants. In fact, the negative impact on the class would have been much more substantial if the parties had sought and the Court had required that the entire Track A claims process be halted for months while the parties notified and obtained the consent of the class on such a minor issue.

Movants also argue that the parties made a material modification to the Consent Decree that substantially harmed the class when they failed to consult all class members before deciding to consider farmers who attempted to apply, in addition to those who actually applied, as part of the class in this case (referred to by the parties as the "constructive application" principle). Movants misunderstand the motivation behind and the impact of this decision. The constructive application principle, which was fully agreed to by the parties, actually expanded the scope of the class beyond the plain language of the Consent Decree and made more farmers eligible for relief. While the language of the Decree limits the class to "African

American farmers who ... *applied* to the United States Department of Agriculture ... for participation in a federal farm credit or benefit program," Consent Decree ¶ 2(a) (emphasis added), the constructive application principle extends possible relief in this case to those who *attempted to apply* as well, so long as certain requirements are met. Such an agreed-upon interpretation of the Consent Decree is not a change of circumstances that operates to the detriment of claimants; it is a reading that substantially broadens the scope of the class, is highly favorable to the claimants, and is completely in line with the parties' and the Court's expectation that the Consent Decree would be liberally construed to the benefit of African American farmers. *See* Consent Decree, Apr. 14, 1999, at 1–2 ("[I]n light of the remedial purposes of this Consent Decree, the parties intend that it be liberally construed to effectuate those purposes in a manner that is consistent with the law.").

## III. CONCLUSION

As Class Counsel, government counsel and movants' counsel all note in their briefs, the Consent Decree approved by the Court on April 14, 1999, is a grand, historical first step toward righting the wrongs visited upon thousands of African American farmers for decades by the United States Department of Agriculture. In the 20 months since the settlement was approved, more than 11,000 African American farmers have filed successful claims for relief and have received monetary compensation and/or debt relief totaling more than $500,000,000. This motion, brought on behalf of seven farmers out of the class of more than 21,000, seeks to obliterate this achievement and the possibility that thousands of additional farmers will receive additional millions of dollars by having the Court vacate the Consent Decree. Such an action would not only mean that the thousands of hours and hundreds of millions of dollars spent to this point administering the Decree would all be for naught, but also would mean that the thou-

sands of farmers who have already prevailed on their claims would be forced to return their monetary awards to the government and would have to reassume the debt of which they just recently were relieved. Movants have failed to demonstrate that there are any changed circumstances that justify modifying or vacating the Consent Decree. Accordingly, it is hereby

ORDERED that certain individual plaintiffs' motion to reconsider the fairness of the Consent Decree [248–1] is DENIED.

SO ORDERED.