Timothy PIGFORD, et al., Plaintiffs,

v.

Ann M. VENEMAN, Secretary, United States Department of Agriculture, Defendant.

Cecil Brewington, et al., Plaintiffs,

v.

Ann M. Veneman, Secretary, United States Department of Agriculture, Defendant.

Nos. CIV.A.97–1978(PLF), CIV.A.98–1693(PLF).

United States District Court, District of Columbia.

Sept. 11, 2002.

---

96

See also, 292 F.3d 918.

Jacob A. Stein, Stein, Mitchell & Mezines, Alexander John Pires, Jr., Conlon, Frantz, Phelan & Pires, David A. Branch, Anthony Herman, Covington & Burling, Richard Talbot Seymour, Lieff, Cabraser, Heimann & Bernstein, LLP, Washington, DC, J. L. Chestnut, Jr., Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, Selma, AL, John Michael Clifford, Mona Lyons, Clifford, Lyons & Garde, Caroline Lewis Wolverton, U.S. Department of Justice, Washington, DC, Marcus B. Jimison, Stephon J. Bowens, Durham, NC, Phillip L. Fraas, Washington, DC, for Plaintiffs.

Michael Sitcov, Terry M. Henry, Susan Hall Lennon, U.S. Department of Justice Civil Division, Daniel Edward Bensing, U.S. Department of Justice Federal Programs Branch, Amanda Quester, Federal Trade Commission Bureau of Consumer Protection, David Monro Souders, Weiner Brodsky Sidman & Kider, PC., Elizabeth Goitein, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants.

Wyndell Oliver Banks, Washington, DC, for Non party.

Randi Ilyse Roth, St. Paul, MN, Pro se.

John Wesley Davis, Washington, DC, James W. Myart, Jr., Law Offices of

James W. Myart, Jr., & Associates, San Antonio, TX, for Claimant.

Evans M. Folins, Los Valores, CA, Pro se.

Dennis Charles Sweet, Lanston, Frazer, Sweet & Freese, Jackson, MS, Ford C. Ladd, Alexandria, VA, Gerald Robert Lear, Arlington, VA, for Movants.

Evelyn M. Coleman, Hazlehurst, MS, Pro se.

Willie S. Maymon, Rolling Fork, MS, Pro se.

Colie Dixon, Sr., Georgetown, MS, Pro se.

L D. Maymon, Hazlehurst, MS, Pro se.

Lois S. Clark, Wesson, MS, Pro se.

Curtis Dixon, Jackson, MS, Pro se.

Linda Catching, Hazlehurst, MS, Pro se.

Henry A. Vaughn, Hazlehurst, MS, Pro se.

Floria A. Vaughn, Hazlehurst, MS, Pro se.

Marilynn Stewart, Jackson, MS, Pro se.

Ezra McNair, Crystal Springs, MS, Pro se.

Grover Miller, Georgetown, MS, Pro se.

Geraldstine Miller, Georgetown, MS, Pro se.

Larry D. Barnes, Harrisville, MS, Pro se.

Edith Lomax–Barnes, Crystal Springs, MS, Pro se.

Daryl Brentr, Pinola, MS, Pro se.

Curtis Dixon, Jackson, MS, Pro se.

Harold B. Dixon, Hazlehurst, MS, Pro se.

Larry Garrett, Georgetown, MS, Pro se.

Velma J. Collins, Hazlehurst, MS, Pro se.

## MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

The Court has before it two motions filed by several pro se members of the plaintiff class: a motion to vacate the Consent Decree in this case or, in the alternative, to stay all proceedings pending order on said motion, and a motion to remove lead Class Counsel, both requesting an emergency hearing.[1] Because the Court finds that these motions concern common issues, the Court will address both motions together.

The Court finds no grounds to grant the extraordinary relief sought by movants. To the extent that these motions are based on the recent opinion of the United States Court of Appeals for the District of Columbia Circuit in this case, *see Pigford v. Veneman,* 292 F.3d 918 (D.C.Cir.2002),

---

1. Four movants are named in the text of both motions: Thomas Burrell, Eddie Slaughter, Fernando Burkette and William H. Miller. Gary Grant also joins the motion to remove Class Counsel. Despite the government's objections that not all of the above movants or other individuals who have signed the motions are members of the plaintiff class with standing to bring these motions, the Court finds that more than one of the above-named individuals are members of the class and thus do have standing. *See* Response and Opposition of Conlon, Frantz, Phelan & Pires to motion to vacate Consent Decree or in the alternative, to stay all proceedings pending order on said motion and request for emergency hearing at 1–2. Nor will the Court consider the representation of Class counsel that four of the five movants have no basis for complaint because they participated in the process to which they now object and prevailed on their claims. *See id.* The Court will move to the substance of the motions rather than address the issue of standing with respect to each movant.

movants have misread that opinion and the prior Orders of this Court cited therein.

## I. MOTION TO VACATE THE CONSENT DECREE

■ With respect to the motion to vacate the Consent Decree, movants rely on the court of appeals' statement that the Decree is "unworkable." *See* Motion to Vacate Consent Decree at 2. In making that determination, however, the court of appeals necessarily was referring only to the tight deadline schedule of the Track B process—since that was the matter before it—although the judgment was influenced by the court's assessment of counsel's overall performance when faced with a workload well beyond what anyone could have imagined and counsel's failure to seek the assistance of this Court or other lawyers earlier. *See Pigford v. Veneman*, 292 F.3d at 926–27. The Consent Decree therefore was described as "unworkable" only with respect to the Track B process established by the Consent Decree and the relatively few Track B cases in which crucial deadlines were missed. *See id.* With respect to those cases, this Court may now fashion a narrow remedy that is "suitably tailored to the changed circumstances." *Id.* at 927 (citing *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 391, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (modification of consent decree permitted only where required by significant changes in law or fact and must be tailored to changed circumstances)). As the government notes, to vacate the Consent Decree would be " 'far too broad' a remedy" to address the "unforeseen obstacles" that have arisen in some Track B cases. Government Opposition to motion to vacate Consent Decree at 4 (citing *Pigford v.*

*Veneman*, 292 F.3d at 927). *See also Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. at 384, 112 S.Ct. 748. Although Class Counsel have encountered many difficulties in the implementation of this enormously complex settlement agreement, those difficulties do not warrant vacating the Consent Decree.

Indeed, to vacate the Consent Decree would nullify the settlement of this case, "the grand, historical first step toward righting the wrongs visited upon thousands of African–American farmers for decades by the United States Department of Agriculture," *Pigford v. Glickman*, 127 F.Supp.2d 35, 40 (D.D.C.2001), and would undo the substantial progress that has been made for so many African–American farmers in the long five years since this case was filed. To vacate the Consent Decree also would require that every dollar already paid out to African–American farmers, whether in cash awards or in the form of debt relief or tax relief, be returned to the government. *See id.* To date, nearly $800 million of relief has gone to approximately 13,000 families of African–American farmers.[2] Requiring these families to pay back the considerable sums that they received would be an extreme, unwarranted remedy that would bring great hardship to thousands of members of the class.

In urging the Court to vacate the Consent Decree, movants have made much of the court of appeals' reference to the "double betrayal" of African–American farmers; first, historically, by the Department of Agriculture and then—at least as this Court reads the opinion—by counsel in litigating the merits of certain individual claims under the Consent Decree. To the extent that some have read the "double betrayal" language more broadly, they are

---

**2.** *See* Facilitator's Report of September 9, 2002 (available from Consent Decree Facili-

tator).

taking it out of context. As noted, the court of appeals' ruling pertained only to those Track B cases where crucial discovery and other deadlines have been missed, not to any events occurring before or even closely following entry of the Consent Decree. *See Pigford v. Veneman,* 292 F.3d at 927. The ruling did not relate at all to the over 20,000 Track A cases that were not the subject of the court of appeals' opinion. While the court of appeals criticized Class Counsel's failings regarding Track A, the ruling itself did not turn on those errors but only on the mishandling of Track B claims. Finally, the court of appeals' "double betrayal" language could not have related to any actions that may have been taken—or not taken—by the Department of Agriculture after the settlement, because any such actions necessarily would be beyond the scope of this case and its settlement. *See Pigford v. Glickman,* 185 F.R.D. 82, 92, 110–11 (D.D.C.1999), *aff'd,* 206 F.3d 1212 (D.C.Cir.2000) (class consisted only of African–American farmers discriminated against between January 1, 1983 and February 21, 1997, and consent decree did not provide mechanism to prevent future discrimination).

Similarly, the references by this Court and the court of appeals to conduct "border[ing] on malpractice," related only to counsel's failure "to meet critical consent decree deadlines," Memorandum Opinion and Order of April 27, 2001 at 5, deadlines required to be met *after* the Consent Decree was approved. Class Counsel ably litigated the case throughout its early stages, and they negotiated and entered into a fair settlement for the class as a whole. Indeed, this Court has noted just how remarkable Class Counsel's performance was at those early stages in vigorously litigating this case to the brink of trial and negotiating a landmark settlement with the government. *See id.* at 4–5 ("Class Counsel have earned accolades of acclaim for their efforts in initiating this

case, litigating it to the verge of trial, and then negotiating a truly historic settlement with the government."). To the extent that the Court has been justifiably critical of Class Counsel, its concerns have related only to counsel's handling of the implementation process *after* entry of the Consent Decree. *See id.; Pigford v. Veneman,* 143 F.Supp.2d 28 (D.D.C.2001); *Pigford v. Veneman,* 148 F.Supp.2d 31 (D.D.C.2001). Class Counsel's failings in handling certain matters after entry of the Consent Decree cannot provide a basis for vacating the Consent Decree.

## II. MOTION TO REMOVE LEAD CLASS COUNSEL

 Removal of Class Counsel at this stage would be an extreme action that should not be taken lightly. Removal of counsel would be appropriate only if the Court were to find that it was absolutely necessary to preserve the integrity of the adversary process, as, for example, where an attorney's conflict of interest undermines the Court's confidence in the vigor of the attorney's representation of his or her client, or where the attorney is in a position to use privileged information concerning the other side as a result of prior representation. *See Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979); *see also Koller ex rel. Koller v. Richardson–Merrell, Inc.,* 737 F.2d 1038, 1055–56 (D.C.Cir. 1984), *vacated on other grounds,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *Ackerman v. National Property Analysts, Inc.,* 1993 WL 258679 (S.D.N.Y.1993). Here, movants have presented no evidence of a conflict of interest or the potential misuse of privileged information by Class Counsel. Furthermore, the Court sees nothing that would be gained by the removal of Class Counsel now since this case already has reached the advanced stages of settlement implementation. *See In re Barnett,* 97 F.3d 181, 184 (7th Cir.1996)

(removal of class counsel improper where trial was almost concluded and nothing would be gained from expelling attorneys).

At the core of the criticisms voiced both by this Court and by the court of appeals was Class Counsel's repeated failure to meet deadlines for submission of claimant Petitions for Monitor Review, specifically the November 13, 2000 and May 15, 2001 deadlines. *See* Memorandum Opinion and Order of April 27, 2001 at 1–3, 5–6; *Pigford v. Veneman*, 292 F.3d at 920. Class Counsel's failure in this respect was significant, as evinced by this Court's imposition of sanctions and its framing of issues for a possible future hearing on sanctions. In fact, the Court considered the performance of Class Counsel with respect to the Monitor review process "dismal," their disregard of deadlines "brazen," and their explanation for this performance with respect to the Monitor Petition process unacceptable and evasive. Memorandum Opinion and Order of April 27, 2001 at 2–5.

Still, the practical impact of Class Counsel's failings was to threaten the government's enjoyment of the benefit of its bargain and to cost the government as much as an additional $33 million, not to deprive claimants of the right to Monitor review. *See* Memorandum Opinion and Order of April 27, 2001 at 6, n. 2. Ultimately, all the claimant Petitions subject to the November 13, 2000 deadline were either fully supported and deemed filed as of the original deadline or were withdrawn from the petition process as a result of substantive review by Class Counsel.[3] While the Court is aware of allegations that Class Counsel mishandled certain individual peti-

tions, no such misconduct has been found by this Court or by the court of appeals, and movants' papers do not constitute a basis for making such a finding. As it has made clear in the past, the Court is fully prepared to impose sanctions on Class Counsel if the Court finds that Class Counsel "has shirked any of their responsibilities with respect to the filing of these materials and/or withdrawals [of Petitions for Monitor Review]." Memorandum Opinion and Order of April 27, 2001 at 6.[4] No evidence or argument presently before this Court, however, warrants Class Counsel's removal.

The efforts of Class Counsel have resulted in relief for thousands of African–American farmers. Although final decisions and awards have been made in thousands of individual claims, many claims remain to be finally determined and Class Counsel continues to make important contributions. None of the mistakes in the implementation process that have come to the attention of this Court and been discussed by the court of appeals warrants the removal of Class Counsel in the midst of the Consent Decree implementation process. For all of these reasons, it is hereby

ORDERED that the motion to vacate the Consent Decree [633] is DENIED; and it is

FURTHER ORDERED that the motion to remove lead Class Counsel [634] is DENIED.

SO ORDERED.

---

3. To ensure that claimants were not injured by Class Counsel's failure, the Court expressly required that each Petition be supported by "fully researched, fully briefed, fully documented materials." Memorandum Opinion and Order of April 27, 2001 at 6.

4. *See also Board of Education of the City of New York v. Nyquist*, 590 F.2d at 1247 ("Since disqualification entails immediate disruption of the litigation, it is better to relegate any questions about [counsel's] conduct to other appropriate proceedings.")