**In the Matter of William M. MALONEY, et al., Petitioners,**

v.

**Paul E. PLUNKETT, United States District Judge, Northern District of Illinois, Eastern Division, Respondent.**

Nos. 88–2316, 88–2327.

United States Court of Appeals, Seventh Circuit.

Submitted July 12, 1988.

Decided July 14, 1988.

Opinion Aug. 3, 1988.

---

Edward R. Theobald, Chicago, Ill., for petitioners.

Patricia Rosen, Chief Civ. Appeals Div., Atty. General's Office, Chicago, Ill., for respondent.

Before BAUER, Chief Judge, and POSNER and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

On July 12, the plaintiffs in a "reverse discrimination" suit pending in the district court—a civil rights suit that several white Chicago policemen had brought against city officials—asked us to vacate Judge Plunkett's order (1) discharging the jury that had been selected to hear the case, (2) ordering that a new jury be selected, and (3) forbidding the parties to exercise any peremptory challenges in the selection of the new jury. Judge Plunkett based this order on his finding that both sides had exercised peremptory challenges on racial grounds—the plaintiffs to exclude blacks from the jury, the defendants to exclude whites. Because Judge Plunkett had announced that he was planning to discharge the jury on July 15, we had to act quickly on the plaintiffs' motion, and on July 14, in a brief unpublished order, we granted it. This opinion explains the basis of our action more fully.

The plaintiffs both challenge the correctness of the judge's conclusion that they exercised their peremptory challenges on racial grounds and argue that, in any event, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which held that a prosecutor's exercise of peremptory challenges on racial grounds in a criminal case violates the equal protection clause of the Fourteenth Amendment, does not apply to the exercise of peremptory challenges on racial grounds by private parties in civil suits, such as the plaintiffs here. The defendants disagree with both points but agree that the sanction of forbidding either side to exercise peremptory challenges in the selection of the new jury is improper and can and should be corrected by the issuance of a writ of mandamus. The defendants have therefore filed their own petition for mandamus, but our disposition of the plaintiffs' petition has made it moot.

■ Interlocutory rulings ordinarily are unappealable until the end of the proceedings in the district court; and this principle is not to be evaded by facile invocation of mandamus, *In re City of Springfield*, 818 F.2d 565 (7th Cir.1987), which 28 U.S.C. § 1651(a) empowers us to issue in appropriate cases. Earlier this year the Supreme Court repeated that only exceptional circumstances amounting to usurpative conduct justify the issuance of a writ of mandamus to correct a ruling by a district judge. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, — U.S. —, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988). Yet in the same opinion the Court indicated that a less stringent test might be proper where the challenged ruling had infringed the right to jury trial. "Issuance of a writ of mandamus will be appropriate in exceptional cases involving stay orders. This Court has made clear, for example, that a stay order that deprives a party of the right to trial by jury is reversible by mandamus. See *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959)." 108 S.Ct. at 1143 n. 13. Although this view is supported by a number of other cases as well—see 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure § 3935, at pp. 242–44 (1977), and cases discussed in the majority and dissenting opinions in *First Nat'l Bank of Waukesha v. Warren*, 796 F.2d 999 (7th Cir.1986)—the panel majority in *Waukesha* declined to recognize a general right to challenge such rulings on mandamus. The district judge in that case had classified an issue as equitable and hence not triable to a jury; this court was unwilling to make such rulings reviewable as a matter of course on mandamus.

In the present case the district judge did not deny either side its Seventh Amendment right to trial by jury, but he did deny a statutory incident to jury trial; more important, he deliberately refused to enforce a peremptory (pun intended) statutory command. Section 1870 of the Judiciary Code provides, in words that could not be clearer, that, "In civil cases, each party shall be entitled to three peremptory challenges." (There is additional language relating to multi-party cases, such as this one, and to challenges for cause, but it does not qualify the simple and clear imperative that we have quoted.) Cases deeming the denial of a party's right to exercise his peremptory challenges reversible error are legion, see, e.g., *Carr v. Watts*, 597 F.2d 830 (2d Cir.1979) (per curiam), and there is no argument—there can be no argument—that section 1870 is inapplicable to the present case. Nevertheless Judge Plunkett forbade either side to exercise any peremptory challenges in selecting a new jury. He was angry because he thought that the plaintiffs, and to a lesser extent the defendants, had used their peremptory challenges to alter the racial composition of the jury. The deprivation of the statutory right to exercise peremptory challenges as a sanction for misconduct is, so far as we are able to determine, utterly without precedent. Absence of authority would not necessarily be decisive if Judge Plunkett had given a reason for punishing the parties in this way, other than sheer irritation at what he considered their childish and improper behavior; but he gave no reason. He was annoyed with the parties and didn't want the bother at a new voir dire of trying to prevent them from again exercising their peremptory challenges on what he considered improper, indeed deeply offensive, grounds.

■ Ordinarily even a clear error in an interlocutory ruling is not a ground for the extraordinary remedy of mandamus. Clear error is a necessary condition, and one easily satisfied here as we have just seen, but it is not a sufficient condition. Not only must the error be clear; it must be irremediable by the regular appellate remedies. See, e.g., *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam); *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). And ordinarily the inconvenience, lost time, and sunk costs of such further proceedings as could have been avoided by correcting the trial judge's error are not considered the kind of irremediable harm that will satisfy the stringent requirements for issuing a

writ of mandamus. See, e.g., *Allied Chemical Corp. v. Daiflon, supra,* 449 U.S. at 36, 101 S.Ct. at 191. It could of course be argued that when the error is clear, *of course* the appellate court should correct it at once; the court will have to do it sooner or later—why not sooner? But the court may not have to do it later; the error may be mooted by the victory of the party against whom it was committed. And to determine whether an error is clear enough to warrant immediate correction can itself be a time-consuming endeavor.

The application of the "black letter" rules for when mandamus will be issued has not been unwavering. We have mentioned cases involving the right to trial by jury; they break the mold. And mandamus is used routinely against judges who refuse to recuse themselves when required by statute to do so, see, e.g., *United States v. Balistrieri,* 779 F.2d 1191, 1205 (7th Cir.1985), even though this error could be corrected on appeal by ordering a new trial before a different judge. The writ is a safety valve (one of several safety valves, in fact) in the final-judgment rule, and its proper use cannot be wholly reduced to formula. If as we have seen the ordinary inconvenience of a new trial cannot justify the use of the writ, still, extraordinary inconveniences may do so. In *In re International Business Machines Corp.,* 687 F.2d 591, 603–04 (2d Cir.1982), the expense of continuing to litigate a suit that the plaintiff wanted to drop (an expense that included $100,000 a week in costs of document storage alone) persuaded the court of appeals to issue a writ of mandamus ordering the district judge to dismiss the suit.

The present case is less dramatic, but there is more than the usual inconvenience of an unnecessary trial. Whoever lost at the trial in the district court would, if that court's order were allowed to stand, have a sure-fire ground for appeal, and the trial would have to be done over. This would be just the beginning, and would not be enough by itself. But this new trial (the almost certain consequence if we declined to issue the writ of mandamus) would be

before the *fourth* jury in the case. An earlier trial ended in a mistrial, and that jury was discharged. Then a new jury was picked—the one Judge Plunkett wants to discharge. If the jury that replaces it is selected without either party being allowed any peremptory challenges, there will have to be another trial before still another jury. And that need not be the end, for merely to reverse the denial of peremptory challenges would leave unresolved the question whether, in a civil case, including any subsequent trials in this civil case, race may play any part in the decision to exercise a peremptory challenge.

Indeed, if a new jury is selected in a process in which neither side is allowed any peremptory challenges, it is not clear whether the *Batson* issue will be preserved. If the plaintiffs lose and appeal, they will be met with the argument that it would be pure conjecture to suppose that they would have done better before a different jury or even that they would have exercised any peremptory challenges, on racial or other grounds, to members of the jury panel. See *Goldstein v. Kelleher,* 728 F.2d 32, 38 (1st Cir.1984). For since they would have no peremptory challenges under Judge Plunkett's order, they would not be challenging his refusal to permit them to exercise such challenges on racial grounds.

With the applicability of *Batson* to the present case an unsettled question, discharging an already impaneled jury on the eve of trial is a wasteful and inappropriate method of preserving the question. Should the defendants lose at trial before the already impaneled jury they can raise the *Batson* question on appeal. Allowing Judge Plunkett's order to stand might be misunderstood by other district judges as an expression of this court's view that *Batson does* apply in all cases, a question we leave open; we express no view on that question, or on whether there might be legal grounds other than equal protection for restricting the use of peremptory challenges notwithstanding section 1870.

The exceptional burdens that Judge Plunkett's order would place on the orderly

resolution of this lawsuit, and the manifest infringement of the parties' statutory right to exercise peremptory challenges in a jury trial, have persuaded us that this is a proper case for the extraordinary remedy of mandamus, and therefore we have granted the plaintiffs' petition and have directed Judge Plunkett to proceed to trial before the already impaneled jury.