**In the Matter of Joel E. SANDAHL and Complex Systems, Inc.**

No. 92–3129.

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 21, 1992.

Decided Dec. 2, 1992.

James D. Holzhauer, Tyrone C. Fahner, Javier H. Rubinstein, Mayer, Brown & Platt, Chicago, Ill., Charles W. Wolfram, Cornell Law School, Ithaca, N.Y., for petitioners.

Delmer R. Mitchell, Gena J. Awerkamp, Schmiedeskamp, Robertson, Neu & Mitchell, Quincy, Ill., F. Ross Boundy, Christensen, O'Connor, Johnson & Kindness, Seattle, Wash., for respondent.

Before CUDAHY, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

The defendants in a commercial lawsuit petition us for a writ of mandamus directing Judge Mills to vacate his order disqualifying the law firm of Mayer, Brown & Platt from representing them. The petition requires us to determine the scope of our mandamus jurisdiction over orders of disqualification.

An order disqualifying a lawyer or law firm is not considered a collateral order and therefore cannot be appealed as a matter of right as soon as it is entered. *Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 426, 105 S.Ct. 2757, 2758, 86 L.Ed.2d 340 (1984). But the courts, apparently wanting to provide an additional safety valve in the final-judgment rule, have said that a party whose lawyer is disqualified can seek review of the order by asking for mandamus. *Id.* at 435, 105 S.Ct. at 2763; *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n. 13, 101 S.Ct. 669, 676 n. 13, 66 L.Ed.2d 571 (1981), and cases cited there; *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir.1992); *Christensen v. United States District Court*, 844 F.2d 694, 697 (9th Cir.1988); *In re American Cable Publications, Inc.*, 768 F.2d 1194, 1195 (10th Cir.1985); *In re Continental Investment Corp.*, 637 F.2d 1, 7–8 and n. 12 (1st Cir.1980). If review by means of mandamus means the same thing as review by means of appeal, however, the Supreme Court in holding that an order of disqualification is *not* a collateral order immediately appealable under the final-decision rule of 28 U.S.C. § 1291 may have accomplished little or nothing except to rename "appeal" "mandamus."

Mandamus was not, of course, invented to deal with disqualification orders. It has a long history and a well established—or at least consistently articulated—standard: the petitioner must show *irreparable* harm (or, what amounts to the same thing, the lack of an adequate remedy by way of direct appeal or otherwise) and a *clear* right to the relief sought.

*Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953); *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam); *Mallard v. United States District Court*, 490 U.S. 296, 314, 109 S.Ct. 1814, 1824, 104 L.Ed.2d 318 (1989); *Maloney v. Plunkett*, 854 F.2d 152, 154 (7th Cir.1988). The first half of this test is, it might appear, easily satisfied in the disqualification context: it generally is impossible to get effective review of a disqualification order at the end of the case because it generally is impossible to prove that the outcome would have been different with a different set of lawyers. Impossible at least if the party obtained a competent substitute for the disqualified lawyer—and if not he has only himself to blame, save in the extraordinary situation in which only one lawyer is competent to represent the party, a situation generally confined to the rare case of disqualification on the eve of trial coupled with a refusal to grant a continuance. Yet the Supreme Court rejected this argument when made in support of the contention that a disqualification order imposes the sort of irreparable harm that would justify treating such an order as a collateral order. *Richardson–Merrell Inc. v. Koller, supra,* 472 U.S. at 438, 105 S.Ct. at 2764. It pointed out that the party appealing from an order disqualifying his lawyer may not, should he go on to lose the case and attack the order in an appeal from the final judgment, be required to show that the order caused him to lose—though this question was left open, *id.* at 438, 105 S.Ct. at 2764, as it had been in *Flanagan v. United States*, 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984). And in both *Flanagan* and *United States v. Celani*, 748 F.2d 363, 365–66 (7th Cir.1984), the consequence of disqualification was that the client had no lawyer, not that he had a substitute lawyer, at trial.

While it is true that requiring a new trial because of an error not shown to be harmful is a formula for wasteful duplication,

that has never been a ground for interlocutory appeals. Otherwise many orders granting discovery would be immediately appealable under the collateral-order doctrine, and they are not. *Riese v. Board of Regents*, 957 F.2d 293, 295 (7th Cir.1992); *R.R. Donnelley & Sons Co.*, 931 F.2d 430, 431 (7th Cir.1991); *Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 712 (7th Cir.1986). The Court was explicit in *Richardson–Merrell* that "additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress." 472 U.S. at 436, 105 S.Ct. at 2764. Yet, mysteriously, the Court at the same time held the door open, as we have noted, to mandamus, implying that a disqualification order might be found to have created irreparable harm, although the only conceivable harms would be those that the Court had just held in the same opinion did *not* constitute irreparable harm for purposes of the collateral-order doctrine.

▇ Two differences between collateral-order appeals and mandamus, however, may justify a difference in the requirement of showing harm. First, a collateral order is appealable as a final decision under 28 U.S.C. § 1291, and appeals under that statute are a matter of right. So we cannot refuse to hear and decide an appeal properly filed under that statute even if it is "really" an interlocutory order, which is in fact the character of collateral orders. If disqualification orders were deemed to be collateral orders, the potential for interrupting litigation with interlocutory appeals and burdening the courts of appeals with such appeals would be considerable. Second, the standard of review is the same whether a case is brought to the court of appeals by an appeal from a genuinely final judgment or by an appeal from a collateral order. There is thus no disincentive to appeal the latter sort of order because the standard of review is narrower. Mandamus, in contrast, is a discretionary writ; and the standard of review is narrower than in an ordinary appeal. There is little danger to the courts of appeals of being flooded by petitions for mandamus, and in fact such petitions are relatively infrequent. Professor Moore is therefore on

firm ground in stating that "with respect to the demands of justice made by individual cases, it seems clear that discretionary review by mandamus is to be preferred to enlarging by judicial interpretation the categories of interlocutory orders that are appealable as of right." 9 James William Moore & Bernard J. Ward, *Moore's Federal Practice* ¶ 110.26, at p. 319 (2d ed. 1992) (footnote omitted).

The reality of course is that an order of disqualification can impose substantial hardship on a litigant. If the order is plainly wrong—if this is apparent without elaborate consideration of contested facts and legal principles—considerations of administrative efficiency argue for resort to mandamus as a swift and economical remedy against injustice. Nothing in the text of the All Writs Act, 28 U.S.C. § 1651, or in the history and usages of mandamus, which has been deployed flexibly in cases where irreparable harm could easily have been found wanting—notably cases in which the writ is used to enforce the right to a jury trial, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959); *Maloney v. Plunkett, supra*, 854 F.2d at 154–55; but see *First National Bank v. Warren*, 796 F.2d 999, 1002–06 (7th Cir.1986)—forecloses the use of the writ in the present setting. We have said of the mandamus cases involving the right to a jury trial that "they break the mold" established by the orthodox formula for mandamus. *Maloney v. Plunkett, supra*, 854 F.2d at 155. We added that "mandamus is used routinely against judges who refuse to recuse themselves when required by statute to do so, see, e.g., *United States v. Balistreri*, 779 F.2d 1191, 1205 (7th Cir.1985), even though this error could be corrected on appeal by ordering a new trial before a different judge," and we concluded that the writ's "proper use cannot be wholly reduced to formula." *Maloney v. Plunkett, supra*, 854 F.2d at 155. See also 9 Moore & Ward, *supra*, ¶ 110.13[10], at pp. 169–70; ¶ 110.26.

■ This conclusion, however, makes the second half of the test for mandamus all the more critical in the setting of disqualification. If *clear* right to relief ("clear and indisputable," as the cases sometimes say, *Allied Chemical Corp. v. Daiflon, Inc., supra,* 449 U.S. at 35, 101 S.Ct. at 190)— the existence of a demonstrable injustice— is allowed to slide into *mere* right to relief, on the theory that disqualification cases usually turn on the interpretation of ethical standards rather than disputed facts and hence raise "legal" issues on which appellate courts do not defer to trial courts, mandamus will provide a route of appellate review functionally identical to the direct appeal of disqualification orders. A tendency in some cases, *In re American Airlines, Inc., supra; In re Dresser,* 972 F.2d 540, 542–43 (5th Cir.1992); *Christensen v. United States District Court, supra,* 844 F.2d at 697, it is resisted in others, *In re Mechem,* 880 F.2d 872 (6th Cir.1989); *In re Bushkin Associates,* 864 F.2d 241, 245 (1st Cir.1989); *In re American Cable Publications, Inc., supra,* 768 F.2d at 1195, and we join the resisters. To avoid the collapse of mandamus into appeal, we hold that a litigant who seeks mandamus to set aside an order of disqualification must show that the order is patently erroneous.

■ Well, was it? The plaintiff in the underlying litigation, Glenayre Electronics, is under contract to be bought by N–W Group; the judge treated the acquisition as a *fait accompli.* Mayer Brown has done extensive legal work for N–W. Indeed N–W was a client of Mayer Brown at the time Mayer Brown began to represent the defendants in this case. Section 1.7 of the Illinois Rules of Professional Responsibility forbids a law firm to represent clients having adverse interests without their consent. N–W did not consent, so Mayer Brown sought to eliminate the conflict by terminating its relationship with N–W. It did so, with the latter's consent. The judge held that this did not cure the conflict, because he "cannot allow a lawyer to disregard one client in order to represent another. To hold otherwise would allow a firm to abandon its absolute duty of loyalty to one of its clients so that it can benefit from a conflict of interest which it created." This reasoning is clearly inadequate to support the judge's order. The abandoned client, of course, was N–W. It has not objected to being abandoned. Glenayre has no standing to assert N–W's rights to Mayer Brown's "absolute loyalty." Ill. R.Prof.Resp. 1.9; *Lavaja v. Carter,* 153 Ill.App.3d 317, 106 Ill.Dec. 147, 505 N.E.2d 694 (1987); *Evink v. Pekin Ins. Co.,* 122 Ill.App.3d 246, 77 Ill.Dec. 647, 460 N.E.2d 1211 (1987); *Kevlik v. Goldstein,* 724 F.2d 844, 847 (1st Cir.1984); *United States v. Cunningham,* 672 F.2d 1064, 1072 (2d Cir. 1982).

We emphasize that this is not a case in which a law firm represents adversaries. N–W was not an adversary of the defendants, who are Mayer Brown's clients, at the time that Mayer Brown represented N–W. Nor did Mayer Brown, unceremoniously or otherwise, "dump" N–W so that it could represent the defendants without having a conflict of interest. N–W permitted Mayer Brown to withdraw and is not complaining that its permission was coerced or otherwise ineffective. It is true that in defense of the judge's order, Glenayre argues that Mayer Brown has learned things in its representation of N–W which will give it an unfair advantage in defending against Glenayre's suit once the acquisition of Glenayre by N–W is completed. If this is so—as it might have been had Mayer Brown represented N–W in the acquisition of Glenayre, but it did not—this would be a ground for disqualification. There is no evidence of such an abuse, however, nor is the suggestion of one plausible in the circumstances. Glenayre was not a part of N–W when the latter was represented by Mayer Brown. It still is not a part of it. All the acquisition will do, once it takes place, will be to make N–W the owner of Glenayre, an event that need have no effect whatever on Glenayre's conduct of its suit, let alone arm Mayer Brown with crucial insights into that conduct.

And even if the likelihood that Mayer Brown would carry into the defense of this suit knowledge gleaned from its representation of N–W is larger than we think, this

was not the ground of the judge's decision, or even alluded to by him. On its own terms—and thus without regard to the only argument that, if substantiated, would indicate the presence of any of the abuses associated with dual representation—the decision of the district court is patently erroneous and must be vacated. The writ of mandamus is therefore

GRANTED.