In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3983

In re Arthur L. Lewis, Jr., et al.,

Petitioners.

Petition for a Writ of Mandamus to the United States
District Court for the Northern District of
Illinois, Eastern Division.
No. 98 C 5596--Joan B. Gottschall, Judge.

Argued March 28, 2000--Decided May 11, 2000

Before Easterbrook, Manion, and Evans, Circuit Judges.

Easterbrook, Circuit Judge.   Chicago hires
firefighters on the basis of a competitive
examination plus additional criteria applied to
those who achieve a passing score. During the
last four years Chicago has been hiring from a
list created in 1995; the list includes those who
scored 89 or higher on that year's exam. The
plaintiff class in a suit (Lewis v. Chicago)
under Title VII of the Civil Rights Act of 1964
contends that the 1995 exam and related selection
criteria have had an unjustified disparate impact
on black applicants for firefighters' positions.
Plaintiffs were represented at the outset by
Judson H. Miner and Bridget Arimond (both
affiliated with Miner, Barnhill & Galland) plus
three attorneys affiliated with the NAACP Legal
Defense and Education Fund or the Chicago
Lawyers' Committee for Civil Rights Under Law.
But the district court has disqualified Miner and
Arimond from continuing to represent the class,
which asks us to issue a writ of mandamus
reinstating them.

Plaintiffs seek mandamus because an order
disqualifying counsel in civil litigation is not
immediately appealable as a collateral order.
Richardson-Merrell Inc. v. Koller, 472 U.S. 424
(1985), reaffirmed in Cunningham v. Hamilton
County, 527 U.S. 198, 119 S. Ct. 1915 (1999)
(disqualification coupled with monetary sanction
not immediately appealable). See also Flanagan v.
United States, 465 U.S. 259 (1984) (order
disqualifying defense counsel in criminal case
not immediately appealable); Firestone Tire &

Rubber Co. v. Risjord, 449 U.S. 368 (1981) (order declining to disqualify counsel not immediately appealable). Despite Richardson-Merrell and Cunningham, plaintiffs have proceeded much as if mandamus were an interlocutory appeal by another name. They contend that we should exercise de novo review and substitute our judgment for the district judge's, which we wouldn't do even on appeal. "If review by means of mandamus means the same thing as review by means of appeal, however, the Supreme Court . . . may have accomplished little or nothing except to rename 'appeal' 'mandamus.'" In re Sandahl, 980 F.2d 1118, 1119 (7th Cir. 1992). Richardson-Merrell and its cousins are not so easily evaded. Although the Court suggested in Richardson-Merrell that mandamus could be appropriate, it reiterated Firestone's conclusion (449 U.S. at 378-79 n.13) that only "exceptional circumstances" could justify use of that writ. 472 U.S. at 435. See also Cunningham, 119 S. Ct. at 1923 (Kennedy, J., concurring) (mandamus may be justified to avoid "an exceptional hardship itself likely to cause an injustice"). We must therefore inquire whether disqualification of Miner and Arimond is likely to cause irreparable injury to the class and, if so, whether the district judge has committed such a clear error that issuance of a peremptory writ is justified.

Miner, Barnhill & Galland is a small law firm specializing in employment-discrimination litigation. Many persons affiliated with the firm have national reputations for quality work on plaintiffs' behalf. Perhaps this reputation led to Miner's appointment as Chicago's Corporation Counsel, a position in which he served between 1986 and 1989. Arimond represented the City from 1988 to 1989 as Special Deputy Corporation Counsel for Affirmative Action. Both Arimond and Miner devoted a great deal of time to testing, hiring, and the many long-running disputes that have grown out of the City's staffing of its police and firefighting forces. Chicago understandably is unhappy that its former lawyers now represent its adversaries in litigation, but no rule of law perpetually disqualifies lawyers for a public entity from suing their former clients. What Chicago contends--what the district judge found to be true--is that during their stints as the City's principal lawyers for employment-discrimination matters, Miner and Arimond had many long and detailed conversations with Robert T. Joyce and Donald Stensland. Between March 1981 and July 1998 Joyce was the Deputy Commissioner of the Employment Services Division of the City's Department of Personnel. Since May 1987 Stensland has been Deputy Commissioner of the Chicago Fire Department; from 1981 to 1987 he was the Fire Department's Director of Labor Relations. Chicago believes

that Joyce and Stensland provided Miner and Arimond with privileged information about the City's hiring practices and about their attitudes toward hiring decisions, information that Miner and Arimond could turn to plaintiffs' advantage in this litigation if Joyce or Stensland testifies (or otherwise provides evidence) about the development of the 1995 test, the selection of the cutoff score, and related decisions made on their watch. Plaintiffs do not deny that Miner and Arimond possess information covered by the attorney-client privilege; they contend, however, that Joyce and Stensland are bureaucrats who lack knowledge useful in a disparate-impact case. Evidence will come from test designers and statisticians, plaintiffs insist, so there will be no opportunity to use against the City any privileged information provided by Joyce and Stensland. Instead of resolving the parties' dispute about the likely course of the litigation, the district court concluded that disqualification is the safest course because it precludes the possibility of using or divulging privileged information.

Plaintiffs say that this precautionary decision causes them irreparable injury, which justifies a writ of mandamus. To the extent they locate this injury in the costs of trial (should retrial ensue after a successful appeal), they run headlong into Richardson-Merrell, Cunningham, Flanagan, and many other cases holding that the financial costs of litigation are not "irreparable injury." See, e.g., Petroleum Exploration, Inc. v. Public Service Commission, 304 U.S. 209, 222 (1938); Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974); FTC v. Standard Oil Co., 449 U.S. 232, 244 (1980); PaineWebber Inc. v. Farnam, 843 F.2d 1050 (7th Cir. 1988). Many an interlocutory order-- denials of summary judgment and decisions concerning discovery prominent among them--may occasion substantial expense and second trials, but they are not on that account immediately reviewable. See Reise v. University of Wisconsin, 957 F.2d 293 (7th Cir. 1992). Even the disclosure of privileged information in discovery has been deemed inadequate to support mandamus. Kerr v. United States District Court, 426 U.S. 394 (1976). Plaintiffs suggest that disqualification may inflict irreparable injury because they may find other good lawyers, so any error will turn out to be harmless, but we do not see why the absence of injury (that's what a finding of harmless error means) should equate to irreparable injury. Similar arguments were made and rejected in Richardson-Merrell, Cunningham, and Flanagan; they are no stronger when the label changes from "appeal" to "mandamus." Employment-discrimination litigation under Title VII is

unlikely to inflict financial injury on plaintiffs with meritorious claims, because attorneys' fees for prevailing plaintiffs are shifted to employers. If plaintiffs must try their case twice (with an appeal in between) to vindicate their rights, then the employer will pay a legal bill twice as steep; plaintiffs' net recovery will be unaffected.

To the extent plaintiffs locate irreparable injury in the damage to their lawyers' reputation--in the implication that Miner and Arimond would violate their ethical duties and use privileged information against their former client--again Richardson-Merrell and Cunningham supply the answer. In Cunningham the judge found that counsel had behaved unethically (and incompetently) and imposed monetary sanctions, yet the Court held this an inadequate basis of immediate review. See also Richardson-Merrell, 472 U.S. at 435.

One other kind of irreparable injury remains to be considered. Perhaps disqualification will cause the plaintiff class real harm in the sense of hampering its chance of vindicating a legitimate claim, but this injury will be impossible to establish because it is so hard to evaluate the benefits of legal expertise and know, even in retrospect, the destinations of paths untaken. Then erroneous disqualification will lead to a loss on the merits (or lesser damages), and the judgment will be affirmed in the end. Real but hard-to-quantify loss is a standard form of irreparable injury, one that has twice led us to issue writs of mandamus to reinstate disqualified lawyers. See Sandahl; In re Barnett, 97 F.3d 181 (7th Cir. 1996). Plaintiffs contend that they are at risk of this kind of injury because Miner and Arimond are exceptional lawyers who will prove hard to replace in contingent-fee litigation. Yet the class already has three other lawyers and the backing of two substantial civil-rights litigation groups. These three lawyers can carry on with the benefit of work already done and experts already hired, and we think it likely that the NAACP Legal Defense and Education Fund and the Chicago Lawyers' Committee for Civil Rights Under Law can recruit other fine lawyers to augment their efforts. Miner and Arimond have contributed their expertise to crafting the theory of the case and conducting discovery; the fruits of these labors can be enjoyed by the plaintiff class, without risk of disclosing or using confidences should Joyce or Stensland become witnesses.

Although this is not a completely satisfactory response-- maybe it shows only that we have been

unable to detect what is, by definition, hard-to-detect injury--it is difficult to press too far with this theory of irreparable harm without overturning Richardson-Merrell in effect though not in name. For similar claims may be made almost every time a lawyer is disqualified. To accept them unblinkingly would be to authorize ready interlocutory review. Sandahl accordingly concluded that only "patently erroneous" disqualification orders may be undone by mandamus. 980 F.2d at 1121. Instead of providing the kind of immediate appellate review that Richardson-Merrell and Cunningham disapprove, a court can accommodate this possibility by careful review on an ultimate appeal. Chicago insists that the plaintiff class does not suffer irreparable injury because any error is reviewable eventually. Let us take Chicago at its word. If, at the conclusion of the case, the panel concludes that Miner and Arimond should not have been disqualified, Chicago will bear the burden of establishing the absence of the kind of irreparable harm we have been discussing. Chicago is taking a risk, because if the district judge is wrong about disqualification then Chicago can lose at trial but may be unable to hold onto a victory, but at oral argument the City insisted that this is a risk it is willing to bear.

Just as a judge asked to issue a preliminary injunction must balance the costs of error, ensuring that the costs of false positives (preliminary relief wrongly issued) do not exceed the costs of false negatives (relief wrongly denied), see Illinois Bell Telephone Co. v. WorldCom Technologies, Inc., 157 F.3d 500 (7th Cir. 1998), so a court of appeals must balance error costs. A shortfall in the predicted size of irreparable injury may be overcome by a substantial likelihood of error--for if the district judge has committed an obvious blunder, then immediate correction benefits both sides, without undermining application of the final-decision rule for closer cases. Thus if the district judge had committed the sin of which plaintiffs accuse her--precluding public employees from ever representing a governmental body's adversaries after they leave office--we would issue a writ to correct the patent error. Both Sandahl and Barnett involved similarly obvious blunders by the district courts, blunders that imposed pointless costs on litigants. This case does not. The district judge did not apply a categorical rule of disqualification but stressed that Joyce and Stensland remained in responsible positions when the 1995 test was devised and used.

Of course if, as plaintiffs contend, Joyce and Stensland have no useful evidence to present,

then Miner and Arimond should not have been disqualified. But whether they have evidence cannot be determined a priori. It remains to be seen what evidence they have. Plaintiffs apparently believe that only expert evidence matters to a disparate-impact case. Chicago believes otherwise; it thinks that the provenance of the 1995 test is important--that the test was designed to overcome problems identified in the past and that its virtues (or demerits) can be understood only against that background, a background that Joyce and Stensland discussed in confidence with Miner and Arimond. If that is so, then Joyce or Stensland may have useful evidence, and the confidences might become important.

Disputes of this sort illuminate the virtues of the final-decision rule. Instead of trying to predict how the trial will play out, we defer review until the end, when we can see how matters did play out. What a mess it would be if we were to issue a writ of mandamus reinstating Miner and Arimond, and then both Joyce and Stensland give significant testimony. But if, as plaintiffs predict, Joyce and Stensland have nothing to contribute, and Chicago has been crying wolf, then at the end of the case plaintiffs will have a powerful appellate issue. As we have said, however, Chicago is willing to take that risk.

The petition for a writ of mandamus is denied, without prejudice to consideration of all disqualification issues on appeal from the final decision.