**Peter J. SHADWELL, Ensign (O–1), U.S. Naval Reserve and Kriscelda Shadwell, Petitioners,**

**v.**

**Teresa DAVENPORT, Captain, Judge Advocate General's Corps, U.S. Naval Re-**

---

serve, Military Judge, Respondent.[1]

NMCM 200201644.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 22 Nov. 2002.

LT Brian T. Maye, JAGC, USNR, Counsel for Petitioner ENS Shadwell.

John B. Wells, Civilian Counsel for Petitioner Kriscelda Shadwell.

LT Lori L. McCurdy, JAGC, USNR, Counsel for Respondent.

Before PRICE, Senior Judge, CARVER and BRYANT, Appellate Military Judges.

---

1. As originally filed, each petitioner designated CAPT Davenport, military judge, and the United States as respondents. In our order of 23 August 2002, we directed, among other things, that the respondents show cause why the Petitions for Extraordinary Relief should not be granted. We also requested that the Judge Advocate General of the Navy appoint counsel for the respondent military judge. Lieutenant L. McCurdy, JAGC, U.S. Naval Reserve, filed an answer on behalf of the respondents on 10 September 2002. Included in the respondents' answer is a motion requesting the United States be released as a party. Respondents' Answer of 10 Sep 2002 at 12. The petitioners oppose the request. The motion to release the United States as a party is granted. Absent contrary indication, this Court assumes Lieutenant McCurdy was designated by the Judge Advocate General to represent CAPT Davenport, military judge, as sole remaining respondent.

BRYANT, Judge:

On 20 August 2002, the petitioners submitted petitions for extraordinary relief in the nature of a writ of prohibition, or in the alternative, a writ of mandamus.[2] The petitioners allege that the military judge, upon motion of the Government, erred by disqualifying Mr. John B. Wells, Ensign (ENS) Shadwell's civilian defense counsel (CDC), after finding a conflict of interest existed between CDC's representation of ENS Shadwell and CDC's representation of his wife, Kriscelda Shadwell. Further, the petitioners allege the military judge erred by concluding that, "due to the length of time that has passed and the shared confidential information," a conflict hearing pursuant to *United States v. Davis*, 3 M.J. 430 (C.M.A.1977), would not be conducted. Appellate Exhibit XXX at 9.

The Government's motion before the military judge to disqualify CDC was premised on CDC's alleged conflict of interest with his representation of ENS Shadwell and 1) representation of ENS Shadwell's 5–year–old stepson (MF)(*see infra* note 4); 2) future representation of another potential Government witness (*see infra* note 3); and 3) representation of Mrs. Shadwell. The second noted basis is no longer at issue, as CDC informed the potential Government witness that he could not represent the witness or consult with him until the current issues related to the petitioners were resolved. Although determining that CDC represented MF from 8 March to 24 April 2002, the basis for the disqualification of CDC by the military judge was the alleged conflict of interest posed by CDC's continuing representation of both ENS Shadwell and his wife. Appellate Exhibit XXX at 8–9. As such, our review of these petitions is limited to the military judge's stated basis for disqualification of CDC.

The petitioners request that we reverse the military judge's rulings on these matters. We find that the petitioners have failed to establish that they were denied a clear and indisputable right; failed to demonstrate that enduring the normal pace of appellate review under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, will effectively deny ENS Shadwell the relief to which he is entitled; and failed to show that the military judge's order is patently erroneous. Accordingly, the petitions are denied.

## I. Background

ENS Shadwell is charged with three specifications of assaulting MF, in violation of Article 128, UCMJ, 10 U.S.C. § 928. He is also charged with conduct unbecoming an officer, for the acts of assault (Article 133, UCMJ, 10 U.S.C. § 933), as well as obstructing justice (Article 134, UCMJ, 10 U.S.C. § 934) for allegedly making false statements to investigators. Two of the alleged assaults are relevant for purposes of this decision. The first assault consisted of ENS Shadwell slapping MF's face in Corpus Christi, Texas on or about 5 January 2001. The second assault occurred on or about 11 January 2002, in Meridian, Mississippi when he used his fist to punch MF in the stomach.[3]

As outlined in the military judge's findings of fact, which we adopt, on or about 4 March 2002 CDC was contacted by ENS Shadwell's brother to potentially represent the Shadwell family. Appellate Exhibit XXX at 1. On 8 March 2002, the family retained CDC with Mrs. Shadwell signing a retainer document on 15 March 2002.[4] On 17 March 2002, CDC released a letter indicating he represented the Shadwell family and that all contact by the Government with the family would have

2. Ensign and Mrs. Shadwell each filed a petition with this Court, with the two petitions substantially mirroring each other. The petitions were consolidated under the same docket number.

3. The third charged assault occurred on or about 21 February 2002, when ENS Shadwell, while at a golf course, allegedly lifted MF over his head and threw the boy to the ground. After this incident, ENS Shadwell was apprehended and placed in pretrial confinement. A witness to this event subsequently contacted CDC about representation on a separate issue.

4. The CDC's representation of Mrs. Shadwell was, initially, to assist in getting ENS Shadwell released from pretrial confinement and dismissal of a Military Protective Order. The CDC continued to represent Mrs. Shadwell concerning possible civil lawsuits or administrative action against the Government.

to be coordinated through him.[5] On 22 March 2002, ENS Shadwell signed a retainer document with CDC. At the Article 32, UCMJ, pretrial investigation, conducted on 28–29 March 2002, CDC represented ENS Shadwell.[6] Neither the petitioners nor MF testified at the Pretrial Investigation.

Charges were referred to trial by general court-martial on 9 May 2002.[7] Appellate Exhibit XXX at 2. At an Article 39(a), UCMJ, session, on 22 May 2002, ENS Shadwell was arraigned. At this session he was represented by CDC and detailed military defense counsel. The CDC, on behalf of ENS Shadwell, reserved entry of pleas and moved for his release from pretrial confinement. Following presentation of evidence, the military judge then-assigned (not the respondent) ordered ENS Shadwell released. The Government did not mention at this session any potential conflict of interest in CDC's representation of both ENS Shadwell and his wife.

On 31 July 2002, a second Article 39(a), UCMJ, session, took place, this time before the respondent military judge. At this session the Government moved to disqualify CDC based upon a conflict of interest.

During the second Article 39(a), UCMJ, session it was ascertained that the Government had not interviewed either Mrs. Shadwell or MF. Nevertheless, the Government indicated its intention to call them to testify at trial on the merits.[8] There was a twofold basis for calling Mrs. Shadwell to testify.

First, concerning the alleged slap in Texas in January 2001, ENS Shadwell apparently admitted to her that he had, in fact, slapped MF. Record at 70. Second, Mrs. Shadwell apparently heard, but did not actually see, her husband strike MF in the stomach in January 2002. She was in an adjoining room when the alleged assault took place. She would purportedly testify she heard her son cry out and that immediately thereafter he ran to her and indicated that his stepfather had hit him.

Related to Mrs. Shadwell's potential trial testimony, the record contains documentation from two family advocacy/support agencies. Some suggest, among other things, that during the time frame of the alleged assaults, there was significant martial stress because of differences between ENS and Mrs. Shadwell regarding his physical disciplining of MF. There are, however, alleged comments by ENS Shadwell that at times he had to restrain his wife from physically disciplining MF.

At the Article 39(a), UCMJ, session, CDC indicated his belief that the interests of ENS Shadwell and Mrs. Shadwell "would not be adverse to each other" and, as such, he could represent them both. Record at 254. Furthermore, even if there was a conflict of interests, the conflict could be waived. *Id.* at 255.

## II. Jurisdiction

In its answer to the petitions, the Respondent correctly notes that this Court has juris-

---

5. In initial correspondence with Government counsel, CDC indicated that his representation of "the family" specifically included Mrs. Shadwell and "any of her minor children." Appellate Exhibit XXX at 5. He later indicated that he represented the Shadwell family but that MF "is not included" as a family member. *Id.* He further noted, however, that inasmuch as he represented Mrs. Shadwell, and she was MF's mother, the Government should contact him if there was any desire to interview MF. After Government counsel asked for further clarification as to who represented MF, CDC indicated MF was not "within the [Shadwell] family" and that requests to talk to MF should be directed to the attorney hired by the Shadwell's to represent MF. *Id.* at 6.

6. Although not specifically noted in the record, the parties do not dispute that at the pretrial investigation the Government argued to the Investigating Officer (IO) that CDC should be disqualified due to a perceived conflict of interest.

ENS Shadwell's Brief of 20 Aug 2002 at 11, 32; Kriscelda Shadwell's Brief of 20 Aug 2002 at 6.

7. We note, however, that the charge sheet contained in the record of trial does not include the referral page. Inasmuch as the record otherwise reflects proper referral of charges to trial, and inasmuch as the parties have voiced no concern as to the referral, we consider the omission from the record, for the purpose of the resolution of the petitions, to be merely an administrative oversight. Record at 2–3.

8. The petitioners dispute the military judge's finding of fact that the parties admit Mrs. Shadwell is a "crucial witness." ENS Shadwell's Brief of 20 Aug 2002 at 22; Kriscelda Shadwell's Brief of 20 Aug 2002 at 22; Appellate Exhibit XXX at 4. Whether disputed or not, this Court readily recognizes that Mrs. Shadwell could be a significant Government witness.

diction to entertain this petition. Respondents' Answer of 10 Sep 2002 at 3; *see also Ponder v. Stone*, 54 M.J. 613 (N.M.Ct.Crim. App.2000).

### III. Nature of Writ

A writ of mandamus is normally issued by a superior court to compel a lower court "to perform mandatory or purely ministerial duties correctly." BLACK'S LAW DICTIONARY 973 (7th ed.1999). Conversely, a writ of prohibition is used "to prevent a lower court from exceeding its jurisdiction." *Id.* at 1228. In other words, its purpose is "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Dew v. United States*, 48 M.J. 639, 648 (Army Ct.Crim.App.1998)(quoting *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943))(internal quotation marks omitted).

 The issuance of such a writ is "a drastic remedy that should be used only in truly extraordinary situations." *Aviz v. Carver*, 36 M.J. 1026, 1028 (N.M.C.M.R.1993)(citing *United States v. Labella*, 15 M.J. 228 (C.M.A.1983)). It is generally disfavored, because it disrupts the normal process of orderly appellate review. *McKinney v. Jarvis*, 46 M.J. 870, 873–74 (Army Ct.Crim.App.1997). For that reason, "[t]o justify reversal of a discretionary decision by mandamus [or prohibition], the judicial decision must amount to more than even gross error; it must amount to a judicial usurpation of power." *Labella*, 15 M.J. at 229 (internal quotation marks omitted). The petitioner has the burden of showing that he has "a clear and indisputable right" to the extraordinary relief that he has requested. *Aviz*, 36 M.J. at 1028. *See also Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 661–62, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978)(holding settled limitations on power of appellate courts to review interlocutory orders requires more than simple showing of error; petitioner must prove he had a clear and indisputable right to a particular result or decision that he was not able to obtain from lower court).

 In addition, a petition for extraordinary relief is not a substitute for the normal appellate process. *See United States v. Frischholz*, 16 C.M.A. 150, 36 C.M.R. 306, 1966 WL 4467 (1966); *Hamilton v. De Giulio*, 35 M.J. 829, 830 (A.C.M.R.1992), *aff'd*, 41 M.J. 32 (C.M.A.1994). To prevail, the petitioner "must demonstrate that enduring the normal pace of appellate review under Article 66, UCMJ, 10 U.S.C. § 866, will effectively deny him the relief to which he is entitled." *Aviz*, 36 M.J. at 1028. This is so "even though hardship may result from delay and perhaps [an] unnecessary trial; and whatever may be done without the writ may not be done with it." *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (citations omitted); *Andrews v. Heupel*, 29 M.J. 743, 747 (A.F.C.M.R.1989). In the case of counsel disqualification, "[t]o avoid the collapse of mandamus into appeal, ... a litigant who seeks mandamus to set aside an order of disqualification must show that the order is patently erroneous." *In re Sandahl*, 980 F.2d 1118, 1121 (7th Cir.1992); *see also In re Barnett*, 97 F.3d 181, 183–84 (7th Cir.1996).

### IV. Discussion

 The petitioners in this case have failed to show they have a clear and indisputable right to the extraordinary relief requested. They have also failed to demonstrate that enduring the normal pace of appellate review under Article 66, UCMJ, will effectively deny ENS Shadwell the relief to which he is entitled. *Aviz*, 36 M.J. at 1028. Finally, they have failed to show that the military judge's order is patently erroneous. *In re Sandahl*, 980 F.2d at 1121.

In denying the petitioners' requested relief, we are mindful, of course, of our superior Court's admonition that "[a]bsent a truly extraordinary circumstance rendering virtually impossible the continuation of the established [attorney-client] relationship, only the accused may terminate the existing affiliation with his ... counsel prior to the case reaching the appellate level." *United States v. Iverson*, 5 M.J. 440, 442–43 (C.M.A.1978). "Once established, an existing attorney-client relationship can only be severed by an express release from the accused, a judicial order, or other good cause." *United States*

*v. Allred,* 50 M.J. 795, 799–800 (N.M.Ct.Crim. App.1999). However, our superior Court has made it equally clear that "the right to counsel of choice is not absolute and must be balanced against society's interest in the efficient and expeditious administration of justice." *United States v. Thomas,* 22 M.J. 57, 59 (C.M.A.1986)(holding the military judge did not abuse his discretion in refusing a continuance to allow the accused to be represented by his civilian counsel).

In considering the petitioners' request, we are also mindful of the persuasive guidance provided by the United States Supreme Court in *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). *Flanagan,* like ENS Shadwell's case, involved the preconviction appeal of a disqualification order by a trial court of an accused's counsel of choice. While *Flanagan* directly addressed whether the four petitioners could immediately appeal, under 28 U.S.C. § 1291, the trial court's disqualification, the Court's stated policy considerations in reaching their determination are applicable to the case before us. In determining that there was no jurisdiction to review the disqualification order prior to entry of "final judgement," the Court in *Flanagan* noted that the trial court had "found that no actual conflict of interest had yet developed but there was a clear potential for conflict." *Id.* at 262, 104 S.Ct. 1051. Reminiscent of the disfavor generally given extraordinary writs because of the disruption to the normal process of orderly appellate review, the Court stated that "[b]ecause of the compelling interest in prompt trials" it interpreted the final judgment rule "with the utmost strictness in criminal cases." *Id.* at 265, 104 S.Ct. 1051. Addressing the petitioners' constitutional violation claim, the Court noted that:

> [A] constitutional objection to counsel's disqualification is in no danger of becoming moot upon conviction and sentence. Moreover, it cannot be said that the right petitioners assert, whether based on the Due Process Clause of the Fifth Amendment or on the Assistance of Counsel Clause of the Sixth Amendment, is a right not to be tried. Double jeopardy and speech or debate rights are *sui generis* in this regard. Rather, just as the speedy trial right is merely a right not to be convicted at an excessively delayed trial, the asserted right not to have ... counsel disqualified is, like virtually all rights of criminal defendants, merely a right not to be convicted in certain circumstances. Unlike a double jeopardy or speech or debate claim, petitioners' claim would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof. Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship.

*Flanagan,* 465 U.S. at 266–67, 104 S.Ct. 1051 (citations and internal quotes omitted).

The *Flanagan* Court specifically commented on the petitioners' ability to appeal under the normal appellate process. The Court stated:

> Petitioners correctly concede that postconviction review of a disqualification order is fully effective to the extent that the asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself. Obtaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding. Similarly, postconviction review is concededly effective to the extent that petitioners' asserted right is like the Sixth Amendment rights violated when a trial court denies appointment of counsel altogether, or denies counsel's request to be replaced because of a conflict of interest. No showing of prejudice need be made to obtain reversal in these circumstances because prejudice to the defense is presumed. In sum, as petitioners concede, if establishing a violation of their asserted right requires no showing of prejudice to their defense, a pretrial order violating the right does not meet the third condition for coverage by the collateral-order exception: it is not effectively unreviewable on appeal from a final judgment.

*Id.* at 267–68, 104 S.Ct. 1051 (citations and internal quotes omitted).

Additional guidance in determining if the petitioners in this case have met their burden can be gleaned from selected postconviction appeal cases involving a trial judge's disqualification, or failure to disqualify, an accused's counsel of choice. In the normal course of appellate review, pursuant to Articles 66(c) and 59(a), UCMJ, 10 U.S.C. §§ 866(c) and 859(a), we apply an "abuse of discretion" standard in reviewing the military judge's decision to disqualify counsel based upon what was determined to be an unwaivable conflict of interest. *Wheat v. United States,* 486 U.S. 153, 163–64, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *United States v. Odom,* 53 M.J. 526, 531 (N.M.Ct.Crim.App.2000), *review den'd,* 55 M.J. 237 (2001); *United States v. Lanoue,* 137 F.3d 656, 663 (1st Cir.1998). Whether an actual conflict of interest exists in such cases is a mixed question of law and fact requiring *de novo* review. *United States v. Smith,* 44 M.J. 459, 460 (1996). As enunciated above, however, a more rigorous standard applies when one is seeking relief through an extraordinary writ. In this case, the petitioners' burden is to show more than a gross error. They must show that the military judge's decision amounted to a judicial usurpation of power. *Ponder,* 54 M.J. at 616.

With this standard of review distinction in mind, we once again turn to guidance from the United States Supreme Court concerning when criminal trial courts may refuse to accept an accused's proffered waiver of conflict-free counsel and bar an accused from retaining an attorney who also represents one or more co-accused. In *Wheat v. United States,* the Supreme Court made it clear that the Sixth Amendment right to choose one's own counsel is not absolute:

> [T]he appropriate inquiry [in evaluating Sixth Amendment denial of counsel of choice claims] focuses on the adversarial process, not on the accused's relationship with his lawyer as such. Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat,* 486 U.S. at 153, 108 S.Ct. 1692 (citations and internal quotes omitted). While *Wheat* involved multiple representations of co-accused, the same general principles can be applied to other issues of conflict of counsel. In *Wheat,* the Court noted that a criminal court's legitimate interest in ensuring that trials are conducted within ethical and professional standards is a well-recognized limitation upon an accused's Sixth Amendment right. *Id.* at 160, 108 S.Ct. 1692; *see Odom,* 53 M.J. at 531. Applicable ethical standards of professional conduct constrain counsel from representing multiple clients in the same case.[9]

An accused is "entitled to have conflict-free counsel." *United States v. Murphy,* 50 M.J. 4, 10 (1998). While joint representation is not *per se* violative of constitutional guarantees, there are inherent difficulties in assessing all possible conflicts of interest in multiple representation scenarios. *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In *Holloway,* also

9. *See* "Conflict of Interests," Judge Advocate General Instruction (JAGINST) 5803.1B, Rule 1.7 (11 Feb 2000):
 a. A covered attorney shall not represent a client if the representation of that client will be directly adverse to another client, unless:
 (1) the covered attorney reasonably believes the representation will not adversely affect the relationship with the other client; and,
 (2) each client consents after consultation.
 b. A covered attorney shall not represent a client if the representation of that client may be materially limited by the covered attorney's responsibilities to another client or to a third person, or by the covered attorney's own interests, unless:
 (1) the covered attorney reasonably believes the representation will not be adversely affected; and
 (2) the client consents after consultation. ***When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.*** (emphasis added).
The term "covered attorney" also applies to civilian counsel representing individual members of the Naval service before courts-martial. JAGINST 5803 at ¶ 4(b)(2).

decided on postconviction appeal, the Supreme Court recognized that "in a case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to *refrain* from doing." *Id.* at 490, 98 S.Ct. 1173. This fact makes it difficult to assess the impact of any conflict of interest, and a knowing and intelligent conflict waiver does not necessarily cure multiple representation issues. There are other interests at stake as well. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear to be fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692. Vigorous investigation of potential conflicts of interest early in the proceedings also helps ensure finality of judgments on appeal. *Id.* at 161, 108 S.Ct. 1692. As the Supreme Court noted in *Wheat:*

> [T]rial courts confronted with multiple representations face the prospect of being "whipsawed" by assertions of error no matter which way they rule. If a [trial] court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance [of counsel].... On the other hand, a [trial] court's refusal to accede to the multiple representation may result in a challenge such as [appellant's] in this case. Nor does a waiver by the defendant necessarily solve the problem, for we note, without passing judgment on, the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendant's who have specifically waived the right to conflict-free counsel.

*Id.* (citations omitted).

In this case the military judge determined that there was a conflict which, in and of itself, served as a proper basis for her to disqualify ENS Shadwell's counsel of choice.

Record at 316–17, Appellate Exhibit XXX; *Wheat,* 486 U.S. at 164, 108 S.Ct. 1692; *see Lanoue,* 137 F.3d at 663; *In Re Grand Jury Proceedings,* 859 F.2d 1021, 1023–24 (1st Cir. 1988). She noted, in detail, the chronology of this case and the scope and timing of the multiple representations. She also listed important facts from the second Article 39(a), UCMJ, session, as well as made detailed findings of fact. Her memorandum of law set forth the relevant legal guidance on the issue, and came to a rational conclusion, based upon the facts and the law. In her review, she determined that the conflict resides, most dramatically, in CDC announcing that he would forgo any substantive cross-examination of Mrs. Shadwell, his other client.[10]

Our review of the record leaves us unaware, as it should, of what confidential information Mrs. Shadwell may have shared, or could share, with CDC as his representation of Mrs. Shadwell continued. There may ultimately be, as the petitioners argue, no confidential information Mrs. Shadwell would share with CDC that would be the least bit detrimental to her husband. However, the military judge was not looking at this matter post-trial. She had before her a situation in which the mother of a small child was likely going to be a reluctant witness against her spouse, who allegedly struck her (not his) child on two occasions. While she was, for now, supportive of her spouse, information contained in the record suggested a yearlong, rather contentious relationship with her spouse concerning the physical disciplining of her son. There was an alleged comment by Mrs. Shadwell to a family advocacy representative, shortly after her husband allegedly punched MF in the stomach, wherein she stated she had "not been honest" about her home environment. Appellate Exhibit XXIV at 15. Further, she allegedly stated, as she prepared to drive MF from the family home, she "hated it here." *Id.* Whether this, or

10. The CDC suggested during the Article 39(a), UCMJ, session, that, even if Mrs. Shadwell were not his client, his tactics would remain unchanged, i.e., that he would not attack her veracity or her narrative of the events. Trial tactics CDC would, or would not, adopt in representing ENS Shadwell if Mrs. Shadwell were not his client is not at issue, nor particularly relevant, for this Court's resolution of the petitions. In denying the petitions, we had to consider the extent to which CDC had to refrain from adopting any particular trial tactic because of his representation of Mrs. Shadwell. *See Holloway,* 435 U.S. at 490, 98 S.Ct. 1173.

similar information, would be admissible at trial either as evidence or impeachment, it at least raises the specter of Mrs. Shadwell's testimony not proceeding as the petitioners stress it would. The interests of ENS Shadwell and Mrs. Shadwell would clearly be in conflict if Mrs. Shadwell, in essence, turned on her husband. With such information, we can not conclude that the military judge's decision to disqualify CDC was patently erroneous. *See In re Sandahl,* 980 F.2d at 1121.

As is almost always the case at the trial court level, judges:

> [M]ust pass on the issue whether or not to allow a waiver of a conflict of interest by a[n] [accused] not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Wheat,* 486 U.S. at 162–63, 108 S.Ct. 1692. In applying the guidance of *Wheat,* and considering the more rigorous standard in pretrial extraordinary writs, we believe that we must allow trial judges "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163, 108 S.Ct. 1692.

Assuming *arguendo* ENS Shadwell is convicted at trial and the conviction results in a punishment that meets the jurisdictional limits of this Court,[11] we agree with him that disqualification of his CDC would be a central issue on appeal. ENS Shadwell's Brief of 20 Aug 2002 at 14. Resolving this issue now could result in delays in the final resolution of the charges against ENS Shadwell. However, appellate review of the issue would be readily available to him. Furthermore, on appeal he would not be required to show prejudice. *Flanagan,* 465 U.S. at 268, 104 S.Ct. 1051. Denial of his petition now does not "effectively" deny him an appeal of this issue. *Aviz,* 36 M.J. at 1028. We do not dispute that CDC may have been more actively engaged in ENS Shadwell's case than his detailed military defense counsel. However, there is absolutely no evidence to suggest that the detailed military defense counsel, who was at both Article 39(a), UCMJ, sessions, is not fully competent to defend ENS Shadwell.

We acknowledge ENS Shadwell executed a document on 26 July 2002, wherein he purports to waive any conflict of interest CDC may have in the representation of both himself and his wife.[12] We specifically agree with the military judge that the purported waiver was insufficient. Appellate Exhibit XXX at 8.

One could arguably disagree with the military's judge's determination that the proceedings in this case had progressed too far for a hearing, pursuant to *United States v. Davis,* 3 M.J. 430 (C.M.A.1977), to exhaustively explore a potential waiver. In *Davis,* our superior Court reversed the lower court which affirmed the trial judge's ruling, because the trial judge failed to "ascertain *on the record* the existence of any potential conflicts of interest or divisions of loyalty by the counsel, and to, in turn, advise this accused of the situation as well as its ramifications, and then elicit from him an *informed* decision as to whether he desired to proceed with his counsel or retain/obtain another." *Id.* at 432. Such an exhaustive inquiry is required to fully ensure the "accused is fully cognizant of the limitations and restrictions placed upon his counsel." *Id.* at 433. Recognizing the fundamental basis of a fair trial is the effective assistance of counsel, the Court added "the Supreme Court has long held that a court should indulge in every reasonable presumption against the waiver of these rights." *Id.* (internal quotes omitted). In this case, it is obvious the military judge

---

11. *See* Article 66, UCMJ.

12. The waiver reads, in part, as follows: "I advised [CDC] that I did not see any way in which questions concerning my relationship with my wife could implicate me in a criminal offense or raise issues of civil liability. I recognize the theoretical conflict of interest but under all the facts known to me elect to waive it." Appellate Exhibit XXX at 6.

considered what could possibly be gleaned from such an expanded hearing. She clearly based her ruling accordingly. We do not find that her decision amounted to a judicial usurpation of power. *See Wheat,* 486 U.S. at 161, 108 S.Ct. 1692; *see also United States v. Augusztin,* 30 M.J. 707 (N.M.C.M.R.1990).

Thus, under these circumstances, the petitioners have not shown that the military judge's ruling is so contrary to statute, settled case law, or valid military regulation as to deny them relief that is clearly and indisputably due them as a matter of right.[13] *McKinney,* 46 M.J. at 874. We do not find that the military judge's decision was patently erroneous. *In re Sandahl,* 980 F.2d at 1121. Accordingly, we hold that the issuance of an extraordinary writ at this time is neither necessary nor appropriate.

### V. Conclusion

The petitions for extraordinary relief in the nature of a writ of prohibition, or in the alternative, for mandamus, are denied without prejudice to ENS Shadwell's right to raise the issue before this court in the normal course of appellate review, if he is convicted of any offense.[14] The petitioners' request that we "strike the transcript portion of the record submitted to the court by respondents in its entirety" is denied. ENS Shadwell's Reply Brief of 16 Sep 2002 at 3; Kriscelda Shadwell's Reply Brief of 16 Sep at 3. The petitioners' request for oral argument is also denied. *Id.* at 2; *Id.* at 2. Petitioners' other requests for relief, to include awarding "costs and attorney fees," are also denied. ENS Shadwell's Reply Brief of 16 Sep 2002 at 9; Kriscelda Shadwell's Reply Brief of 16 Sep at 9.

Senior Judge PRICE and Judge CARVER concur.

---

**13.** We reject as being without merit the petitioners' assertion that the Government's raising of the potential disqualification of CDC was done "to gain a tactical advantage by disqualifying [CDC] on the eve of trial and after extensive pretrial preparation." ENS Shadwell's Brief of 20 Aug 2002 at 24; Kriscelda Shadwell's Brief of 20 Aug 2002 at 6.

**14.** Having decided that the petitioners are not entitled to the requested relief, we find it unnecessary to decide the respondents' assertion that Mrs. Shadwell did not have standing to file her petition since she is not a "party" to her husband's court-martial. Respondents' Answer of 10 Sep 2002 at 3–5.